UNITED STATES, Appellee

v.

TOKUICHI TOBITA, Corporal, U. S. Army, Appellant

3 USCMA 267, 12 CMR 23

No. 710

Decided September 4, 1953

Gladys Towles Root and Herbert Grossman, Esq., for Appellant.

LT COL Thayer Chapman, U. S. Army, LT COL William R. Ward, U. S. Army, and 1ST LT Kenneth A. Howard, U. S. Army, for Appellee.

## Opinion of the Court

PAUL W. BROSMAN, Judge:

On common trial with one Parker—petitioner in No. 731—the accused, Tobita, was convicted by a general court-martial convened at Ascom City, Korea, of the rape of a Korean girl, in violation of Article of War 92, 10 USC § 1564.[1] The conviction was affirmed by intermediate reviewing authorities, and this Court has granted accused's petition for further review to consider the matters dealt with hereafter.

### II

On oral argument, it appeared for the first time that there existed a discrepancy in an important particular between the original record of trial provided this Court and the copy furnished the accused. According to the latter, First Lieutenant Arnold R. Sanchez, although a member, had not sat with the court-martial which tried the accused. However, the original record reflects that Lieutenant Sanchez did in fact participate in the proceedings as a court-martial member. The importance of this matter is paramount: if Lieutenant Sanchez did not sit, the membership of

[1] Since the offense charged was alleged to have been committed prior to May 31 1951, the effective date of the Uniform Code of Military Justice, the charges were laid under the Articles of War. The trial was held after May 31, 1951. It is, therefore, to be judged by the provisions of the Uniform Code of Military Justice and the Manual for Courts-Martial, United States, 1951.

268

the court-martial was reduced to a number below a legal quorum and the court was without jurisdiction. However, the immediate question has to do with the effect to be accorded this discrepancy between the original record and the copy in the hands of the accused.

At the time of the hearing before this Court, appellate defense counsel did no more than present what was characterized as page 2 of the copy of the record of trial furnished the accused, Tobita. A comparison of this paper with page 2 of the original record disclosed the situation described in the preceding paragraph. No reference to this disparity was made in briefs of counsel, nor was the legal position of the accused made entirely clear at the time of argument. Following the completion of arguments on errors previously assigned, a continuance was granted by this Court *sua sponte*. In view of the location and status of the personnel concerned, we requested the Government to secure appropriate affidavits bearing on the problem for the purpose of augmenting whatever information might be secured by appellate defense counsel through the same or other avenues.

Following the request of this Court, the Government has procured affidavits from Lieutenant Sanchez and from Major Colin O. Villines, the officer who served as trial counsel in the case at bar. Sanchez states in brief that he was appointed to serve as a member of the general court-martial which later tried the accused. This particular court sat at intervals from February 1951 to a date in October of the same year—and during this lengthy period necessarily heard a great many cases, many of them involving rape and other serious crimes of violence. Sanchez is a medical officer, and, while the court was in existence, was required frequently to be at the front. His affidavit relates that he is entirely without present recollection of the case to which the accused, Tobita, was a party, and cannot say with any degree of certainty whether he sat as a member of the court at the time Tobita was tried.

Major Villines, on the other hand, is unequivocal. He avers that his "memory of the case and the circumstances surrounding the case is quite good, even at this date," and that Lieutenant Sanchez did in fact sit. He states with assurance that that part of the accused's copy reflecting the absence of Lieutenant Sanchez can be the product of nothing more serious than a reporter's error. Ruefully he sets out the subsequently discovered lack of competence of the soldier who served as reporter at this trial but at none thereafter. He recalls numerous errors which required correction, including some in "that portion [of the record] pertaining to the accounting for the members present or absent." These required the retyping and substitution of several pages. The Major seeks to explain the discrepancy with which we are confronted by suggesting that, although an accurate court-sheet—page 2— was substituted in the original record, through carelessness this must not have been done in the case of the copy furnished the accused. Finally, Major Villines states positively that no trial in which he served as trial counsel ever "proceeded or continued when a quorum of members was not present." He is certain of the accuracy of the original record, and of the incorrectness in this particular of the copy which appears to have been supplied the accused. No information concerning the discrepancy has been furnished the Court by the accused.

It is now the position of appellate defense counsel that in one way or another error was committed in the area under consideration. If the copy furnished the accused is accurate, and the original record is not, then the court was without jurisdiction for want of a membership of "not less than five." Uniform Code of Military Justice, Articles 16, 29, 50 USC §§ 576, 593; Manual for Courts-Martial, United States, 1951, paragraph 4*b*. On the other hand, if the reverse is the case, and the original reflects the true situation, then Article 54(*c*) of the Code, *supra*, has been violated in that no accurate "copy of the record of the proceedings . . . [was] given to the accused as soon as authenticated." See also Manual, *supra*, paragraph 82*g* (1).

Principally counsel for the accused appear to argue that the original record of trial before this Court does not report correctly the membership of the court-martial which tried Tobita and his co-accused. If this is true, the inaccuracy must necessarily be the product either of deliberate falsification or of gross negligence—this in the face of the authenticating signatures of the president of the court and the law officer and the approving signature of the lawyer who represented the accused at that time. It is clear that the burden must be on one who advances such a contention to produce—at the very least—some evidence to support his assertion. There is and can be no presumption that public officers have violated their legal duties. That burden has not been sustained here. It is certainly true that we are without the positive assurance of Lieutenant Sanchez that he sat as a member of the court in question. It is also true that the Government has supplied us with no statements from either the defense counsel at the trial or any member of the court-martial. The reporter, too, has not been heard from. Finally, it may be—as appellate defense counsel argue—that trial counsel's affidavit must be regarded as in some measure self-serving. However, it does not at all follow that it is untrue. Indeed, so far as we are concerned, it is wholly true. We must and do accept it without reservation. Major Villines has asserted that he remembers the trial of the instant case in detail, and that Lieutenant Sanchez participated as a member of the court. Moreover, he has offered a reasonable explanation for the variance between the original record and its copy. On the other hand, nothing has reached us from the accused. We can only conclude that the record has not been impeached, that Lieutenant Sanchez sat as reported therein, and thus that the accused was tried by a general court-martial of not less than five members.

It follows from what we have said that the accused may not have been furnished with an accurate copy of the record of his trial, as required by Article 54(c) of the Code, *supra*. Although the word "accurate" is not used in the legislation with which we are dealing, any reasonable interpretation thereof must be deemed to require its inclusion. We shall assume that he was not, and that this defect constituted error. Does this error demand that we set aside the findings and sentence in this case? We think not. While inaccuracies in a copy of the record furnished an accused doubtless may, under certain circumstances, compel a finding of prejudice, we cannot discern that the present one— and in the instant setting—offered any fair risk of material prejudice to a substantial right of the accused. See Code, *supra,* Article 59 (*a*).

### III

A principal question raised by appellate defense counsel relates to the admission in evidence of a pretrial identification of the prosecutrix by one of the principal witnesses for the prosecution, a soldier named Nolen. This witness had been in the company of accused and Parker on the night of the crime, and had consented to serve as a prosecution witness following a grant of immunity as to his part in the venture. On direct examination he testified to the main events of the evening on which the offense was alleged to have taken place. Thereafter, in response to questions by trial counsel, he testified that two days earlier, in the office of the Staff Judge Advocate, he had selected the complaining witness from among three Korean women. At this point, Nolen identified the complaining witness, who was present in the courtroom. Subsequently, a further prosecution witness testified to Nolen's previous identification of the prosecutrix in the Judge Advocate's office.

It is urged that the law officer erred in permitting the introduction of this evidence of prior identification. Whatever the state of the law in this regard a century ago, or today, the rule applicable in the military establishment is clearly supplied by paragraph 153*a* of the Manual, *supra:*

"If a witness testifies as to the identity of the accused as the person who committed, or did not commit, the offense in question, such testi-

mony may be corroborated, even though the credibility of the witness has not been directly attacked, by showing that the witness made a similar identification with respect to the accused on a previous occasion. In such a case the identifying witness himself and any person who has observed the previous identification may testify concerning it. . . ."

Although the quoted paragraph speaks in terms of identification of one accused of crime, quite clearly the Manual draftsmen did not intend to distinguish between an accused person and any other whose identity might become important in the trial of a case. Such a distinction would be wanting in logic and reason. We do not doubt that the word "accused" was used in the paragraph as a mere exemplar—since identification of one occupying this position is that most frequently encountered. This construction is supported—albeit by inference—by the Legal and Legislative Basis, Manual for Courts-Martial, United States, 1951, 241–242. Viewed in this fashion, paragraph 153a of the Manual authorized the admission of the evidence of prior identification questioned here. It may be observed in passing that the Manual rule in this particular appears to coincide with the more enlightened of the several prevalent notions respecting evidence of prior identification. 4 Wigmore on Evidence (3rd ed.) § 1130.

## IV

This accused also argues that there is insufficient evidence as a matter of law to support his conviction. Specifically, his position is that there is no evidence that the intercourse accomplished was against the will of the victim. It is unnecessary to the disposition of this case, or to its utility in future cases, that we recite in detail the abominable facts of record. It is enough to note that there is reflected a plethora of evidence to support the evident conclusion of the triers of fact that force was necessary, and that it was resorted to by the accused and his companions to accomplish their sexual purpose with respect to the prosecutrix. Such conflicts in the evidence as exist merely operated to raise prob-

lems of credibility, the resolution of which was the function of the court-martial. United States v. Slozes, 1 USCMA 47, 1 CMR 47, decided November 20, 1951; United States v. Creamer, 1 USCMA 267, 3 CMR 1, decided April 3, 1952; United States v. Strong, 1 USCMA 627, 5 CMR 55, decided August 27, 1952; United States v. Frank Abbott Stewart, 1 USCMA 648, 5 CMR 76, decided August 29, 1952; United States v. Washington, 2 USCMA 177, 7 CMR 53, decided February 11, 1953.

## V

Accused's final argument of substance concerns the limitation by the law officer of evidence offered by the defense in mitigation and extenuation. Although he had not tendered himself as a witness in his own behalf, the accused elected to take the stand, before the court-martial returned to deliberate on the sentence to be imposed, and to testify to matters in mitigation and extenuation. Under examination by defense counsel, he denied the use of force. At this juncture, the law officer interrupted to warn that testimony bearing on the merits of the case had no place in that portion of the proceedings devoted to matters in mitigation and extenuation. He further directed that accused and his counsel should restrict themselves to evidence which might serve to explain the offense and its circumstances in a manner tending to lessen its criminality. Manifestly, this ruling of the law officer was proper— it is entirely in accord with the provisions of paragraph 75c(3) of the Manual, *supra*:

"*Matter in extenuation.*—Matter in extenuation of an offense serves to explain the circumstances surrounding the commission of the offense, including the reasons that actuated the accused but not extending to a legal justification. . . ."

It is to be observed that this is not a case in which, following a plea of guilty, the accused testifies in mitigation to matters inconsistent with the plea. Here the accused entered a plea of not guilty, and, with full knowledge of the alternative open to him, elected not to

**271**

testify on the merits of the case. The two situations are easily distinguishable, and no error is discerned in the rulings of the law officer.

## VI

Other assignments of error are made by the accused. We deem it sufficient to note that we have examined and considered them thoroughly. We have concluded that they are without merit and do not warrant explicit recitation and extended discussion in this opinion.

No prejudicial error appearing, the conviction is affirmed.

Chief Judge QUINN and Judge LATIMER concur.