UNITED STATES, Appellee,

v.

Specialist Michael E. MACIAS, United States Army, Appellant.

ARMY 9800676.

U.S. Army Court of Criminal Appeals.

Decided 21 June 1999.

Motion for Reconsideration Denied 22 July 1999.

For Appellant: Colonel John T. Phelps II, JA; Major Leslie A. Nepper, JA (on brief).

For Appellee: Colonel Russell S. Estey, JA; Lieutenant Colonel Eugene R. Milhizer, JA; Major Patricia A. Ham, JA; Captain Robert F. Resnick, JA (on brief).

Before TOOMEY, Senior Judge, TRANT, and CARTER, Appellate Military Judges.

## OPINION OF THE COURT

TRANT, Judge:

Pursuant to his pleas, appellant was convicted of burglary (two specifications) and indecent assault (two specifications) in violation of Articles 129 and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 929 and 934 [hereinafter UCMJ]. A panel composed of officer and enlisted members sitting as a general court-martial sentenced appellant to a bad-conduct discharge, confinement for one year, forfeiture of all pay and allowances, and reduction to Private E1. The convening authority approved the sentence.

Appellant asserts that the military judge erred by refusing to allow appellant's defense counsel, speaking for appellant as part of appellant's unsworn statement, to state that, as a result of this conviction, appellant would have to register as a sexual offender upon his return to his home state of Arizona pursuant to that state's "Megan's Law."[1] We agree.

1. Statutes of this sort are called "Megan's Law," after Megan Kanka, a seven-year-old child, who was abducted, raped, and murdered near her home in New Jersey. The man who confessed to Megan's murder lived in a house across the street from the Kanka family and had twice been convicted of sex offenses involving young girls. Megan, her parents, local police, and the members of the community were unaware of the accused murderer's history; nor did they know that he shared his house with two other men who had been convicted of sex offenses. This case

Appellant unlawfully entered two barracks rooms during the nighttime and indecently fondled the breasts of two sleeping female soldiers. During the extenuation and mitigation phase of his court-martial, appellant exercised his allocution rights by making an unsworn statement through counsel. *See* Rule for Courts–Martial 1001(c)(2)(C) [hereinafter R.C.M.]. When the defense counsel stated that appellant would have to register with the local police and have his name listed on a statewide registry of sex offenders, the military judge interrupted the unsworn statement and held a hearing out of the presence of the members. The trial counsel objected to this unsworn statement asserting no prior notice and that the Arizona statute had not been introduced into evidence. The military judge precluded appellant's counsel from mentioning the sex offender registration requirement, ruling that it was an inadmissible "collateral" consequence of the court-martial.

■ The right of a military accused to make an unsworn statement has long been recognized in courts-martial. *See United States v. Partyka*, 30 M.J. 242, 246 (C.M.A. 1990). The content of unsworn statements is generally, but not completely, unrestricted. *United States v. Jeffery*, 48 M.J. 229, 230 (1998). This valuable allocution right safeguards the accused's opportunity to apprise the court, personally or through counsel, of extenuating or mitigating circumstances. It places no great burden on the court and maximizes the perceived fairness of the sentencing process. The right to make an unsworn statement is "considered an important right at military law, whose curtailment is not to be lightly countenanced." *United States v. Martinsmith*, 41 M.J. 343, 349 (1995). On occasion, military judges have improperly restricted unsworn statements. *See, e.g., United States v. Britt*, 48 M.J. 233, 234 (1998) (appellant's personal knowledge of his commander's intention to administratively discharge appellant if no punitive discharge adjudged); *Jeffery*, 48 M.J. at 230 (possibility of administrative discharge or early retirement if no punitive discharge ad-

judged); *United States v. Grill*, 48 M.J. 131, 132–33 (1998) (sentence received by appellant's civilian co-conspirator); *United States v. Rosato*, 32 M.J. 93, 96 (C.M.A.1991) (service's rehabilitation program).

The matters that an accused desires to present in an unsworn statement may not have to meet the same admissibility standards as sworn testimony. *See* R.C.M. 1001(c)(3); *Grill*, 48 M.J. at 133. The standard instruction on unsworn statements effectively informs the members of the nature of unsworn statements and of the scope of the members' discretion in determining the weight and significance thereof. Dep't of the Army, Pam. 27–9, Military Judges' Benchbook, at 73 (30 September 1996) [hereinafter Military Judges' Benchbook]. Many accused, with halting eloquence, effectively demonstrate remorse and plead for leniency, while others squander the opportunity by engaging in malevolent recriminations and remorseless refusals to accept responsibility. The wisdom or folly that an accused evinces in deciding what to say in an unsworn statement does not diminish his or her right to say it.

■ However, an accused's rights regarding extenuation and mitigation evidence presentation are not unlimited. Military judges should be vigilant in ensuring that matters in extenuation and mitigation comply with R.C.M. 1001(c). While the rules of evidence may be relaxed in connection with this evidence, particularly concerning the modes of proof, admissibility is still contingent on relevance and materiality and subject to exclusion under Military Rule of Evidence 403 [hereinafter Mil. R. Evid.]. The military judge has the discretion to exclude sentencing evidence having little probative value. *See United States v. Becker*, 46 M.J. 141, 143 (1997). Military judges have appropriately exercised that discretion to prohibit accused from interjecting inappropriate matters into the sentencing proceedings. *See, e.g., United States v. Fox*, 24 M.J. 110, 111 (C.M.A. 1987) (indecent assault victim's prior sexual behavior not relevant or material to appro-

sparked enactment of sex offender registration and notification statutes in that state and several

others.

priate sentence); *United States v. Teeter*, 16 M.J. 68, 72 (C.M.A.1983) (sentencing statement may not be used to challenge findings of guilty in contested case); *United States v. Tobita*, 3 U.S.C.M.A. 267, 12 C.M.R. 23, 27, 1953 WL 2174 (1953) (unsworn statement may not be used to deny use of force following rape conviction).

In the instant case, the military judge exercised her discretion by excluding the proffered unsworn statement matter because she deemed it a "collateral" consequence of the conviction. The military judge's focus on the "collateral" nature of the sexual offender registration requirement might have been entirely fitting if she had been deciding whether an instruction was appropriate. *See United States v. Perry*, 48 M.J. 197, 199 (1998). "Whether a collateral-consequences instruction is appropriate in an individual case depends upon the particular facts and circumstances of that case." *United States*

*v. Greaves*, 46 M.J. 133, 139 (1997). The scope of the allocution right, however, is broader than the requirement as to what matters upon which the military judge must instruct. *See United States v. Hall*, 46 M.J. 145, 146 (1997); *United States v. Griffin*, 25 M.J. 423 (C.M.A.1988).

■ Frequently, accused offer evidence of, or their counsel argue without any specific evidentiary basis, well-known civil disabilities that are incident to most felony convictions. Among the significant rights of ex-convicts circumscribed frequently by Congress or many state legislatures are the right to vote,[2] to hold public office,[3] to serve on juries,[4] to possess a firearm,[5] to live in public housing,[6] and the loss of certain employment opportunities, either in the public sector[7] or in a state-licensed profession.[8] Given the plethora of sexual offender registration laws being enacted in virtually every state jurisdiction,[9]

2. *See, e.g.*, D.C.Code Ann. § 1–1302(7) (1995) (disenfranchises felons, who are otherwise eligible voters, during their incarceration.) *See also Richardson v. Ramirez*, 418 U.S. 24, 94 S.Ct. 2655, 41 L.Ed.2d 551 (1974) (court rejected an equal protection challenge to felon disenfranchisement).

3. *See, e.g.*, D.C.Code Ann. § 1–605.1(g) (1979) (authorizes the removal of any member of the Public Employee Relations Board upon conviction of a felony). *See also DeVeau v. Braisted*, 363 U.S. 144, 80 S.Ct. 1146, 4 L.Ed.2d 1109 (1960) (upholding proscription against a felon holding office in a waterfront labor organization).

4. *See, e.g.*, 28 U.S.C. § 1865 (1988) (excludes from grand or petit jury service persons who have a felony charge pending against them or have been convicted in a state or Federal court for a felony charge and their civil rights have not been restored). *See also United States v. Greene*, 995 F.2d 793 (8th Cir.1993) (exclusion from juror eligibility of persons charged with felony is rationally related to legitimate governmental purpose of guaranteeing probity of jurors and does not violate defendant's equal protection rights).

5. *See, e.g.*, 18 U.S.C. § 922(g)(1) (1998) which makes it unlawful "for any person ... who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year ... [to] possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce." *See also Lewis v. United States*, 445 U.S.

55, 100 S.Ct. 915, 63 L.Ed.2d 198 (1980) (upholding prohibition on firearm possession based upon felony conviction).

6. *See, e.g.*, 42 USC § 13663 (1998) (effective 1 October 1999) which requires that an owner of federally assisted housing prohibit admission to such housing for any household that includes any individual who is subject to a lifetime registration requirement under a state sex offender registration program.

7. *See, e.g.*, Tex. Gov't Code Ann. § 415.058 (1995) (felon prohibited from serving as law enforcement officer, public security officer, or county jailer). *See also Welch v. State ex rel Long*, 880 S.W.2d 79 (Tex.App.1994) (county constable discharged upon felony DUI conviction even though sentence was suspended).

8. *See, e.g.*, D.C.Code Ann. § 2–3305.14(a)(4) (1995) which authorizes the revocation, suspension, or denial of health professional license to any person who has been convicted in any jurisdiction of any crime involving moral turpitude, if the offense bears directly on the fitness of the individual to be licensed. *See also Barsky v. Board of Regents of Univ. of N.Y.*, 347 U.S. 442, 74 S.Ct. 650, 98 L.Ed. 829 (1954) (upholding suspension from practice of medicine for physician convicted of misdemeanor).

9. On May 17, 1996, the President signed a federal version of Megan's Law (Jacob Wetterling Crimes Against Children and Sexually Violent Offender Registration Act) (codified as amended at 42 U.S.C. § 14071 (1998)), which conditioned

it should come as no surprise that the civil disabilities emanating from sexual assault convictions have joined the traditional ones listed above. The extent and duration of the loss of these civil liberties varies from jurisdiction to jurisdiction.[10] For example, the right may be lost only while incarcerated,[11] on probation or parole,[12] or for a certain period after freedom is regained,[13] or in perpetuity.[14] Once released from prison, criminal offenders may not automatically regain all the civil rights they had before their conviction.[15] After their release from prison, they may have to comply with certain procedural processes,[16] or specifically apply for reinstatement [17] as a precondition to regaining their lost civil rights. Given the crazy quilt of rules concerning the loss and restoration of civil liberties incident to convictions and the uncertainty of accused's post-incarceration residence, it may be difficult for defense counsel to establish with certainty the prospective impact of a client's conviction on the deprivation of these rights. Nevertheless, it is permissible for accused to state in unsworn statements their belief that, based upon their convictions, certain civil disabilities will or can occur.

A standard *voir dire* question is whether the potential court-martial panel member accepts that a conviction by itself carries inherent "punishment." Defense counsel fre-

quently beseech the sentencing authority to consider the impact of the court-martial conviction and a punitive discharge on an accused's future. Indeed, court members may be instructed on the future impact that a punitive discharge may have on an accused's "legal rights, economic opportunities, and social acceptability." Military Judges' Benchbook at 69. "Conviction of a felony imposes a status upon a person which not only makes him vulnerable to future sanctions through new civil disability statutes, but which also seriously affects his reputation and economic opportunities." *Parker v. Ellis*, 362 U.S. 574, 593, 80 S.Ct. 909, 4 L.Ed.2d 963 (1960) (Warren, C.J., dissenting), *overruled by Carafas v. La Vallee*, 391 U.S. 234, 88 S.Ct. 1556, 20 L.Ed.2d 554 (1968). This may be particularly apposite when sex offender registration is involved.[18] Community notification, often via an internet posting, often produces adverse consequences and stigma far exceeding that of a punitive discharge. While sex offenders deserve the opprobrium resulting from their criminal misconduct, they also deserve the opportunity to bring the legal collateral impacts of sex offender convictions to the attention of the sentencing authority via an unsworn statement.

■ In the instant case, appellant is arguably correct in stating that he may have to

---

the availability of certain federal funds to states upon the creation of a sex offender registration program, including a mandatory notification provision.

10. *See* Office of the Pardon Attorney, U.S. Department of Justice, *Civil Disabilities of Convicted Felons: A State–by–State Survey* (1996); *see also* Jamie Fellner and Marc Mauer, *The Sentencing Project, Losing the Vote: The Impact of Felony Disenfranchisement Laws in the United States* (1998).

11. Mich. Comp. Laws § 168.758b (1975) (disenfranchised only while confined).

12. Alaska Stat. § 15.05.030 (1999) (voting rights restored after unconditional discharge of prisoner, i.e., after incarceration, parole or probation).

13. *See, e.g.,* D.C.Code Ann. § 11–1906(b)(2)(B) (1994) which disqualifies any person convicted of a felony from serving as a juror during any period of incarceration, probation or parole and for one year following the completion thereof.

14. Va. Const. Art. II, § 1 (1998) (No person who has been convicted of a felony shall be qualified to vote unless his civil rights have been restored by the Governor or other appropriate authority).

15. *See* Howard Itzkowitz and Lauren Oldak, Note, *Restoring the Ex–Offender's Right to Vote: Background and Developments*, Am.Crim. L.Rev. 721 (Spring 1973); Note, *The Disenfranchisement of Ex–Felons: Citizenship, Criminality, and "The Purity of the Ballot Box,"* 102 Harv. L. Rev 1300 (1989).

16. *See, e.g.,* New Hampshire requirement that felon have the restoration of his voting rights specifically listed on the certificate of discharge from prison (N.H.Rev.Stat. Ann. § 607–A:5 1967).

17. *See, e.g.,* Tex.Code Crim. Proc. art. 48.05 (1999) (Ex-felon may have civil rights restored only by filing application at least three years after conviction and after sentence completed).

18. *See also* Mil. R. Evid. 413 and 414.

register with the Arizona authorities as a sex offender. Although appellant was convicted by another jurisdiction (i.e., U.S. military), Arizona law requires him to register as a sex offender if the crime of which he was convicted would have required registration if committed in Arizona. Ariz.Rev.Stat. § 13–3821A (1998). The indecent assaults by themselves would not require appellant's registration because the victims were over the age of eighteen years. *See* Ariz.Rev.Stat. § 13–3821A3 (1998). Under the Arizona statute, however, if the burglaries were committed with a sexual motivation, appellant may be required to register by the judge sentencing the sex offender. *See* Ariz.Rev.Stat. § 13–3821B (1998). Because of procedural differences between how the military and Arizona charge offenses (i.e., Ariz.Rev.Stat. § 13–118 (1995) requires the prosecutor, in a non-sex offense case, to file a special allegation of sexual motivation if he desires to impose a registration requirement), appellant's registration requirement is not definitively established. Nevertheless, there was at least a reasonable basis for appellant to assert such a requirement in his unsworn statement. Thus, we find that the military judge abused her discretion by being unduly restrictive in prohibiting appellant from bringing this matter to the attention of the sentencing authority during his unsworn statement. *See Britt,* 48 M.J. at 234.

We have considered the matters submitted by the appellant pursuant to *United States v. Grostefon,* 12 M.J. 431 (C.M.A.1982), and find them to be without merit.

The findings of guilty are affirmed. Reassessing the sentence on the basis of the error noted, the entire record, and *United States v. Sales,* 22 M.J. 305 (C.M.A.1986), the court affirms only so much of the sentence as provides for a bad-conduct discharge, confinement for nine months, forfeiture of all pay and allowances, and reduction to Private E1.

Senior Judge TOOMEY and Judge CARTER concur.