UNITED STATES, Appellee

v.

Stacie M. SOWELL, Seaman
U.S. Navy, Appellant

No. 03-0688

Crim. App. No. 9901777

United States Court of Appeals for the Armed Forces

Argued March 8, 2005

Decided September 30, 2005

BAKER, J., delivered the opinion of the Court, in which GIERKE,
C.J., and EFFRON, J., joined.  ERDMANN, J., filed a separate
concurring opinion.  CRAWFORD, J., filed a dissenting opinion.


Counsel

For Appellant:  Captain James D. Valentine, USMC (argued);
Captain E.V. Tipton, USMC.

For Appellee:  Captain Glen R. Hines, USMC (argued); Lieutenant
Colonel William K. Lietzau, USMC, and Lieutenant Frank L. Gatto,
JAGC, USNR (on brief).


Military Judge:  Mark S. Utecht


THIS OPINION IS SUBJECT TO REVISION BEFORE FINAL PUBLICATION.

Judge BAKER delivered the opinion of the Court.

Appellant was tried by members at a special court-martial. Contrary to her pleas, she was convicted of conspiracy and larceny in violation of Articles 81 and 121, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 881, 921 (2000), respectively. These offenses arose from the theft of two government personal computers. The adjudged and approved sentence included a bad-conduct discharge, confinement for thirty days, and a fine of $550. This Court granted review on the following issue:

> WHETHER THE LOWER COURT ERRED WHEN IT HELD THAT THE MILITARY JUDGE DID NOT ABUSE HIS DISCRETION WHEN HE RESTRICTED APPELLANT'S UNSWORN STATEMENT BY NOT ALLOWING HER TO STATE THAT HER CO-CONSPIRATOR HAD BEEN ACQUITTED.

Two of Appellant's three alleged co-conspirators were not criminally charged and were subsequently administratively separated from the service. The third, Fire Controlman Third Class (FC3) Elliott, was tried by a separate court-martial prior to Appellant's trial on substantively identical charges and found not guilty. Elliott testified on Appellant's behalf at trial, stating among other things that she and Appellant never talked about stealing computers, that she herself never took any computers, and that she never saw Appellant take any computers. Subsequent to her testimony, a panel member proffered the following question for Elliott: "What legal actions have been

2

taken/or are pending against you for this incident?" Trial counsel objected to the relevance of the question, and the military judge disallowed it.

Trial counsel later challenged the credibility of Elliott's testimony during her findings argument stating:

> Motives.  Let's talk about motives just for a second. I'll come back to that later when I talk about each of the witnesses and any motive they may have.  Petty Officer Elliott.  Who has the biggest motive to come in here and say they didn't do it?  The co-conspirator, that's who.  Not Miller, not Schwey, the co-conspirator.  She's the one that has the best motive to lie . . . .  She wants to help her friend and if her friend goes down?

Emphasis added.  Defense counsel made no objection and Appellant was ultimately found guilty.

At a session held pursuant to Article 39(a), UCMJ, 10 U.S.C. § 839(a) (2000), following the announcement of the findings, trial counsel noticed that Elliot was present in the courtroom.  She then asked the military judge to warn the defense that Elliot's acquittal should not be disclosed to the members.  In response, defense counsel asserted that if his client wished to mention it in her unsworn statement, it was her right to do so.  When pressed for authority for this position, defense counsel cited United States v. Grill, 48 M.J. 131 (C.A.A.F. 1998), arguing that the right to allocution is broad and included the right to reference Elliott's acquittal in the unsworn statement.  The military judge granted the Government's

3

request finding that reference to Elliott's acquittal would be "irrelevant and a direct impeachment of the verdict of the members. . . ."

On appeal, a split panel of the United States Navy-Marine Corps Court of Criminal Appeals reversed the military judge's ruling and remanded for a rehearing on sentence. United States v. Sowell, 59 M.J. 552 (N-M. Ct. Crim. App. 2003). The Government sought and obtained an en banc rehearing. On rehearing, a 4-3 majority reversed the earlier panel's decision, reinstating the military judge's ruling and Appellant's sentence, on the ground that any mention of Elliott's acquittal in her unsworn statement would have challenged the decision of the members on findings and was otherwise beyond the "relevant scope of inquiry . . . as defined by R.C.M. 1001(c)(1)." United States v. Sowell, 59 M.J. 954, 959 (N-M. Ct. Crim. App. 2004.)

Whatever the general rule regarding verdict impeachment and sentence comparison, Appellant's case is distinct, because the Government implied that Elliott was guilty of the very offense for which the accused was on trial. Therefore, we now consider whether the military judge correctly limited Appellant's statement regarding the disposition of Elliott's case because such information would have impeached the verdict, or alternatively, whether the military judge erred because this

4

information was a fair response in rebuttal to trial counsel's findings argument.

## Discussion

We review a military judge's decision to restrict an accused's sentencing statement for abuse of discretion. See generally Grill, 48 M.J. at 132. The Manual for Courts-Martial, United States (2002 ed.), provides an accused with the right to "testify, make an unsworn statement, or both in extenuation, in mitigation or to rebut matters presented by the prosecution . . . ." Rule for Courts-Martial (R.C.M.) 1001(c)(2)(A). This traditional right has been described as "broadly construed" and "largely unfettered." Grill, 48 M.J. at 133. However, while "the scope of an unsworn statement may include matters that are otherwise inadmissible under the rules of evidence, the right to make an unsworn statement is not wholly unconstrained." United States v. Tschip, 58 M.J. 275, 276 (C.A.A.F. 2003); United States v. Jeffery, 48 M.J. 229, 230 (C.A.A.F. 1998).

In Grill, while describing the right of allocution as largely unfettered, we also stated that the right, while "generally considered unrestricted," "was not wholly unrestricted." Id. at 132 (emphasis added); see also Tschip, 58 M.J. at 276. In United States v. Teeter, 16 M.J. 68, 72-73 (C.M.A. 1983)(no obligation to provide accused two chances to defend on the merits through unsworn statement), and more

recently in United States v. Barrier, 61 M.J.__ (C.A.A.F. 2005)(information in unsworn statement must be relevant as extenuation, mitigation or rebuttal), we identified specific limitations on the right of allocution. We also recognized that the unsworn statement remains a product of R.C.M. 1001(c) and thus remains defined in scope by the rule's reference to matters presented in extenuation, mitigation, and rebuttal. And, as early as United States v. Tobita, 3 C.M.A. 267, 271-72, 12 C.M.R. 23, 27-28 (1953), it was held that on sentencing, the accused cannot impeach the findings.

The Government argues before this Court, as it did before the military judge, that reference to Elliott's acquittal would have impeached the findings, as Appellant and Elliott were charged with the same offenses involving the same facts. Moreover, the Government argues, such information would also have been precluded under United States v. Mamaluy, 10 C.M.A. 102, 27 C.M.R. 176 (1959), as impermissible sentence comparison.

Ordinarily, such information might properly be viewed in context as impeaching the members' findings. As the Court of Criminal Appeals concluded, Teeter and Mamaluy remain good law. However, we conclude under the limited circumstances of this case, that the Government's argument on findings opened the door

to proper rebuttal during Appellant's unsworn statement on sentencing.[1]

The function of rebuttal is "to explain, repel, counteract or disprove the evidence introduced by the opposing party." United States v. Banks, 36 M.J. 150, 166 (C.M.A. 1992)(quoting United States v. Shaw, 9 C.M.A. 267, 271, 26 C.M.R. 47, 51 (1958)(Ferguson, J., dissenting)). Trial counsel was aware of Elliott's acquittal on the same facts the week before. Nonetheless, her references to Elliott as a co-conspirator, a term connoting criminal liability, during her findings argument implied that Elliott was guilty of the same offense as Appellant, and therefore had a motive to lie in order to protect herself from prosecution. Absent the inference raised in trial counsel's argument, the military judge might well have found reference to Elliot's acquittal irrelevant to any sentencing issue. However, the members were instructed on sentencing that "all the evidence you have heard in this case is relevant on sentencing." R.C.M. 1001(f)(2). It is true that argument by counsel is not evidence. However, it would seem in this case, with the members having been instructed concerning all the evidence, that the right to rebuttal on sentencing should extend

---

[1] We note that during her unsworn statement Appellant helped to mitigate the concern the military judge may have had about impeachment of the guilty findings when she said during her statement, "I accept your judgment against me."

to allowing comment upon trial counsel's characterization of that evidence during findings. After all, R.C.M. 1001(c)(2)(A) affords an accused the right to "rebut matters presented by the prosecution," suggesting a somewhat broader reading than one limiting the right only to rebut "evidence."[2] Thus, the tenor of trial counsel's argument opened the door to the accused to "explain" Elliot's true status. Moreover, in this case, Elliot's status was already an issue with at least one member of the panel and remained an open question in light of Appellant's reference to the other two co-conspirators. In this context, Appellant should have been permitted an opportunity to fairly respond to the implications of trial counsel's argument on findings. In the terms of the well-worn metaphor, the Government was not only using Teeter as a shield to prevent the members from learning of Elliott's acquittal, but also as a sword to imply that Appellant's co-conspirator was guilty. This was unfair in the context presented.

We are cognizant that Appellant failed to object to trial counsel's argument during findings. This could suggest that counsel concluded that the implications of the argument had not registered with the members. However, at least one member had already asked a specific question regarding the disposition of

---

[2] Of course, an accused would be prohibited from attempting to relitigate the findings in the guise of rebuttal. See Tobita, 3 C.M.A. 267, 12 C.M.R. 23.

Elliott's case. Moreover, defense counsel squarely placed the issue before the military judge on sentencing. Finally, during her unsworn statement, Appellant was allowed to make specific reference to the disposition of the cases of two of her three co-actors. Elliott's status, however, was left hanging and subject to the members' speculation.

In this context, the military judge erred by not allowing Appellant to address the disposition of Elliott's case. This might have been followed by an instruction to the members on the appropriate inferences that could be drawn from the information, citing the principles enunciated in Teeter and Mamaluy. In turn, any statement made by Appellant on this point would have been subject to rebuttal.

Having determined that the military judge erred, we must determine whether the error had a "substantial influence" on the sentence adjudged. United States v. Pablo, 53 M.J. 356, 359 (C.A.A.F. 2000). Although the members might have drawn the inference that Elliott was acquitted or received no punishment on account of her presence in the courtroom, they might also have reasonably inferred that she had yet to be tried for the same offense as Appellant. Because Elliott was an alleged co-conspirator with Appellant based on the same facts, trial counsel's argument and its implications necessarily reached to the core of Appellant's own case. As a result, we are not

convinced that, in the narrow circumstances of this case, the failure to permit Appellant to address the disposition of Elliott's case in her unsworn statement did not have a substantial influence on the members' sentencing decision.

DECISION

The decision of the United States Navy-Marine Corps Court of Criminal Appeals is affirmed as to the findings but reversed as to the sentence.  The record of trial is returned to the Judge Advocate General of the Navy.  A rehearing on sentence may be ordered.

United States v. Sowell, No. 03-0688/NA

ERDMANN, Judge (concurring):

I concur.  I write separately to emphasize my view that the right to make an unsworn statement is specifically defined and limited by the Manual for Courts-Martial, United States (2002 ed.) (MCM).  The scope of pre-sentence allocution through an unsworn statement includes extenuation, mitigation, and matters in rebuttal.  Rule for Courts-Martial 1001(c)(2)(A), MCM.  See United States v. Barrier, 61 M.J. ___, ___ (C.A.A.F. 2005)(Erdmann, J., concurring in the result).  I agree that the Government opened the door for Sowell to refer to her co-actor's acquittal in an unsworn statement.  Sowell's unsworn reference to Elliott's acquittal would have rebutted the Government's suggestion that as a "co-conspirator" Elliott had a motive to lie.  Under the facts of this case, it was prejudicial error for the military judge to exclude this information from Sowell's pre-sentence unsworn statement.

CRAWFORD, Judge (dissenting):

I respectfully dissent because the majority does not examine the context in which this issue arises, mixes findings with sentencing evidence, neglects the burdens that are placed on the parties at various stages of the trial, and fails to analyze the standard of review.

Perhaps most importantly, this decision again raises a fair question regarding the extent to which courts-martial are to be tried according to established rules of law and then evaluated on appeal according to those same rules. In what has become a familiar theme of late,[1] I again must question how we can expect the Rules for Courts-Martial and the Military Rules of Evidence to provide structure and stability to military trials when this Court continues to apply those rules with a malleability that must lend to our decisions, from a practitioner's point of view, certain characteristics of a sweepstakes.

---

[1] See, e.g., United States v. McNutt, __ M.J. __ (C.A.A.F. 2005)(rejecting three decades of settled law on sentencing by military judge alone); United States v. Brewer, 61 M.J. __ (C.A.A.F. 2005)(rejecting MCM provisions on inferences and re-interpreting settled character evidence rules); United States v. Warner, __ M.J. __ (C.A.A.F. 2005)(rejecting five decades of Article 46, UCMJ, interpretation to redefine "reasonably comparable" defense expert); United States v. Kreutzer, 61 M.J. 293 (C.A.A.F. 2005)(finding new right of constitutional magnitude to capital mitigation specialist despite at least six related experts on defense team); United States v. Collins, 60 M.J. 261 (C.A.A.F. 2004)(reinterpreting R.C.M. 706 to impose new requirements on military judge).

United States v. Sowell, No. 03-0688/NA

The majority holds "the military judge erred because this information [the acquittal of a co-conspirator] was a fair response in rebuttal to trial counsel's findings argument." United States v. Sowell, __ M.J. __, __ (4) (C.A.A.F. 2005). This holding overlooks the required foundational predicates for the admissibility of evidence. Military Rule Of Evidence 103(a)(2) provides that the party seeking to admit evidence will make a proffer as to the admissibility of the evidence. What proffer was made in this case?

At trial, the defense counsel noted prior to sentencing that the acquittal of the co-conspirator would be an appropriate subject for Appellant's unsworn statement. "[I]f in my client's unsworn statement she desires to bring that to the member's [sic] attention that's certainly well within her rights to do so." The military judge inquired as to the basis for that, and the defense replied that admissibility was based on United States v. Grill, 48 M.J. 131 (C.A.A.F. 1998), because:

> [T]he Court said it was reversible error for the judge
> to deny the individual servicemember to provide in an
> unsworn statement testimony about other individuals
> who are involved in a conspiracy and the fact that
> some individuals did not have charges brought against
> them; some other individuals received only probation;
> and other individuals had lesser and lenient
> treatment. And certainly the facts of this case are
> similar to this.

The following colloquy took place between the military judge and counsel:

2

MJ: The issue for me in reading this is disparate handling and I concur with you with respect to identifying that nothing happened to Schwey, Cormier, would be appropriate. The handling of Petty Officer Elliott's case took place in precisely the same way as this, so what's the relevance of the information?

DC: Well, the relevance, sir, just as in that case, that it gives the members an opportunity and information on which to determine their sentence. And in those cases other individuals --

MJ: I had no problem with, if there was a sentence in the case, bringing that to the attention of the members, but we don't have a sentence.

DC: That's right, sir, and the fact that --

MJ: So what's the fit?

DC: Well the fit would be then that Petty Officer Elliott has received no punishment whether --

MJ: Because she was found to have been not guilty of something. I mean, as I understand it, the verdict was a finding of not guilty.

DC: Yes, sir. And for that reason --

MJ: And that is certainly not a receiving of no punishment by any sentencing authority.

DC: That's what I'm saying, sir. She's received no punishment because she was acquitted. She couldn't be punished.

MJ: And if your client was found not guilty she couldn't be punished, so what's your point?

DC: I agree, sir. The point is, sir, the members should be aware of it so that they can make a decision based on all those circumstances.

MJ: You have an awful broad brush you're painting here. I mean, it's not -- I have no problem, like I said, if you're talking disparate

3

treatment of individuals in the same class, and here you're talking the same-class. Four coconspirators and you can identify to them that these two -- that two of the people that were at least allegedly involved, particularly given the findings of the court, received different sentences. But I've read the case pretty carefully and again, it goes back to treatment by members -- I mean treatment by the convening authority and one is saying, "Why I've received such favorable treatment and why I'm being treated so harshly."

DC: Well, sir, I get --

MJ: Petty Officer Elliott and Seaman Sowell were treated precisely the same way. They were both sent to a court martial.

DC: I understand that, sir, and I'll agree with you that the facts are different and can be distinguished as you're saying, but the way I read what the court said is that the rights of allocution are broad enough that it could include a situation like this.

MJ: To include acquittal?

DC: Yes, sir.

MJ: I'm not going to allow it. She can mention she went to court-martial. I'll make specific findings in that regard.

I find what we're doing here is a direct impeachment of the members' determination. I don't allow that if I make a determination. I have no problem with her saying that the others got off easy and you can identify that in the unsworn statement. You can -- and you can identify the fact that Petty Officer Elliott went to a court-martial, but I personally don't believe, and I don't believe this particular case constrains me in limiting that right regarding the outcome of that other court-martial. Like I said, had there been an outcome in the sentence of the coconspirator I believe you're on solid

4

ground.  I don't see it in this case.  I find
that that would be information that, under 403,
would be irrelevant and a direct impeachment of
the verdict of the members at this time and I'm
not going to allow it.

I further find that the case that you've cited to
me addresses disparate treatment by various
convening authorities or a particular convening
authority in addressing similar conduct and
treatment of those particular individuals.  And
in this case you have full reign to discuss what
did or did not happen to Cormier and Schwey and
you have free reign to indicate that FC3 Elliott
went to a court-martial, but you're not going to
provide information regarding the verdict.

DC:  So, sir, if I understand your ruling correctly,
my client can mention in her unsworn statement
that FC3 Elliott went to a court-martial, period,
but cannot mention anything beyond that?

MJ:  I am not going to allow the verdict to be
mentioned.  And you can mention all you want
about Schwey not going to anything, but I think
the issue is disparate treatment and I don't
think it's been disparate.  I find that the
notion of acquittal versus non-acquittal under
the same general, almost identical facts to be
inappropriate in a sentencing determination.  I'm
not going to allow that.

The essence of the defense argument at trial was that

Elliott's acquittal was "fair game" under Grill, as applied to

"disparate treatment" cases.  There was no mention that it was

properly admissible to rebut the trial counsel's finding

argument.  In fact, there was no mention of any "rebuttal

theory" at trial, nor was such a theory recognized by any of the

judges of the Court of Criminal Appeals in two separate divided

opinions.  The reason this rationale was not used even by the

dissenting judges below was because this was not the context in which the matter was litigated at trial. There is a good reason why that position was not advocated at the trial level or relied upon by the Court of Criminal Appeals. The argument of counsel is not evidence. See, e.g., United States v. Robles-Ramos, 47 M.J. 474, 477 (C.A.A.F. 1998); United States v. Loving, 41 M.J. 213, 238 (C.A.A.F. 1994); United States v. Clifton, 15 M.J. 26, 29 (C.M.A. 1983). Moreover, the trial counsel's bias argument relates solely to a witness credibility issue relevant only to the findings and not the sentence in the case. Further, the disposition of the criminal case against Elliott does not dictate or affect the standard that either party must meet in order to make a good faith argument as to the co-conspirator's role and her bias in favor of Appellant's acquittal. These different standards of proof were recognized in Dowling v. United States, 493 U.S. 342 (1990), in which the Court noted that an acquittal would not preclude the admissibility of evidence for impeachment purposes under a far less demanding standard. An acquittal is based on the failure of proof beyond a reasonable doubt, whereas, impeachment evidence is considered for admission based on a preponderance standard. Regardless, the trial counsel's argument went to findings, and was not a theme repeated during the Government's sentencing case. Thus, the acquittal and its mention by Appellant in her unsworn

statement must be examined in the context of the evidence on findings, as well as the matters presented by the Government in their sentencing case.[2]

Examined on its own merits, the acquittal of a co-conspirator is not relevant for sentencing purposes. "[I]t has long been the rule that the sentences in other cases cannot be given to the court-martial members for comparative purposes." United States v. Mamaluy, 10 C.M.A. 102, 106, 27 C.M.R. 176, 180 (1959). Additionally, findings in other cases may not be used to impeach the verdict. See, e.g., United States v. Pearson, 17 M.J. 149 (C.M.A. 1984); see also, United States v. Tobita, 3 C.M.A. 267, 12 C.M.R. 23 (1953)(appropriate for the military judge to exclude testimony by the accused as to his denial of the use of force after he had been convicted of rape); United States v. Teeter, 16 M.J. 68, 73 (C.M.A. 1983)(permissible to exclude appellant's alibi testimony during sworn statement and sentencing).

---

[2] Rule for Courts-Martial (R.C.M.) 1001(b) "Matter to be presented by the prosecution." Given that R.C.M. 1001(a)(1) provides that "[a]fter findings of guilty have been announced, the prosecution and defense may present matter pursuant to this rule to aid the court-martial in determining an appropriate sentence," and that both R.C.M. 1001(b) and (c) include categories of information that are not evidence on the findings, I am not willing to share the majority's suggestion that such "matters" may include trial counsel's findings argument. Similarly, I am unwilling to conclude that the Government should be entitled under R.C.M. 1001(d) to offer evidence to rebut defense counsel's findings argument.

United States v. Sowell, No. 03-0688/NA

The majority notes that "[w]hatever the general rule regarding verdict impeachment and sentence comparison, Appellant's case is distinct. . . ." Sowell, __ M.J. at __ (4). "Ordinarily such information [co-conspirator's acquittal] might properly be viewed in the context as impeaching the members' findings." Id. at __ (6). In this case, the very legitimate comment on witness credibility made during argument on the findings is converted to a basis upon which to permit mention by Appellant in her unsworn statement of that which would otherwise be prohibited during any part of the defense sentencing case, even though this nascent "rebuttal theory" was not the argument advanced at trial or considered by any military judge as a basis upon which to permit mention of Elliott's acquittal in Appellant's unsworn statement.

In this fashion, the majority not only announces a further interpretation of R.C.M. 1001(c)(2)(C) -- which was the subject at hand -- but, gratuitously reinterprets R.C.M. 1001(c)(1) and (2) in their entirety, as well as R.C.M. 1001(d). Perhaps most damaging is the majority's revision of the relationship between R.C.M. 919 and 1001(d) to suggest that the contents of argument by either counsel on findings may now be the subject of rebuttal evidence (or rebuttal unsworn statement) by either party during the sentencing case. To the contrary, it would be hard to say there was an abuse of discretion by the military judge when one

8

notes that argument of counsel has not been considered, until this time, as either evidence or testimony, and thus could never be subject to rebuttal.

For all these reasons, and in particular for the air of unpredictability that such decisions continue to inject into military courtrooms around the world, I respectfully dissent.