CRAWFORD, Judge
(dissenting):
I respectfully dissent because the majority does not examine the context in which this issue arises, mixes findings with sentencing evidence, neglects the burdens that are placed on the parties at various stages of the trial, and fails to analyze the standard of review.
Perhaps most importantly, this decision again raises a fair question regarding the extent to which courts-martial are to be tried according to established rules of law and then evaluated on appeal according to those same rules. In what has become a familiar theme of late,[1]1 again must question how we can expect the Rules for Courts-Martial and the Military Rules of Evidence to provide structure and stability to military trials when this Court continues to apply those rules with a malleability that must lend to our decisions, from a practitioner’s point of view, certain characteristics of a sweepstakes.
The majority holds “the military judge erred because this information [the acquittal of a co-conspirator] was a fair response in rebuttal to trial counsel’s findings argument.” United States v. Sowell, 62 M.J. 150, 151-52 (C.A.A.F.2005). This holding overlooks the required foundational predicates for the admissibility of evidence. Military Rule Of Evidence 103(a)(2) provides that the party seeking to admit evidence will make a proffer as to the admissibility of the evidence. What proffer was made in this case?
At trial, the defense counsel noted prior to sentencing that the acquittal of the co-conspirator would be an appropriate subject for Appellant’s unsworn statement. “[I]f in my client’s unsworn statement she desires to bring that to the member’s [sic] attention that’s certainly well within her rights to do so.” The military judge inquired as to the basis for that, and the defense replied that admissibility was based on United States v. Grill, 48 M.J. 131 (C.A.A.F.1998), because:
[T]he Court said it was reversible error for the judge to deny the individual service-member to provide in an unsworn statement testimony about other individuals who are involved in a conspiracy and the fact that some individuals did not have charges brought against them; some other individuals received only probation; and other individuals had lesser and lenient treatment. And certainly the facts of this case are similar to this.
The following colloquy took place between the military judge and counsel:
MJ: The issue for me in reading this is disparate handling and I concur with you with respect to identifying that nothing happened to Schwey, Cormier, would be appropriate. The handling of Petty Officer Elliott’s case took place in precisely the same way as this, so what’s the relevance of the information?
DC: Well, the relevance, sir, just as in that case, that it gives the members an opportunity and information on which to determine their sentence. And in those cases other individuals—
MJ: I had no problem with, if there was a sentence in the case, bringing that to *155 the attention of the members, but we don’t have a sentence.
DC: That’s right, sir, and the fact that—
MJ: So what’s the fit?
DC: Well the fit would be then that Petty Officer Elliott has received no punishment whether—
MJ: Because she was found to have been not guilty of something. I mean, as I understand it, the verdict was a finding of not guilty.
DC: Yes, sir. And for that reason—
MJ: And that is certainly not a receiving of no punishment by any sentencing authority.
DC: That’s what I’m saying, sir. She’s received no punishment because she was acquitted. She couldn’t be punished.
MJ: And if your client was found not guilty she couldn’t be punished, so what’s your point?
DC: I agree, sir. The point is, sir, the members should be aware of it so that they can make a decision based on all those circumstances.
MJ: You have an awful broad brush you’re painting here. I mean, it’s not — I have no problem, like I said, if you’re talking disparate treatment of individuals in the same class, and here you’re talking the same-class. Four coeonspirators and you can identify to them that these two — that two of the people that were at least allegedly involved, particularly given the findings of the court, received different sentences. But I’ve read the case pretty carefully and again, it goes back to treatment by members — I mean treatment by the convening authority and one is saying, “Why I’ve received such favorable treatment and why I’m being treated so harshly.”
DC: Well, sir, I get—
MJ: Petty Officer Elliott and Seaman So-well were treated precisely the same way. They were both sent to a court martial.
DC: I understand that, sir, and I’ll agree with you that the facts are different and can be distinguished as you’re saying, but the way I read what the court said is that the rights of allocution are broad enough that it could include a situation like this.
MJ: To include acquittal?
DC: Yes, sir.
MJ: I’m not going to allow it. She can mention she went to court-martial. I’ll make specific findings in that regard.
I find what we’re doing here is a direct impeachment of the members’ determination. I don’t allow that if I make a determination. I have no problem with her saying that the others got off easy and you can identify that in the unsworn statement. You can — and you can identify the fact that Petty Officer Elliott went to a court-martial, but I personally don’t believe, and I don’t believe this particular ease constrains me in limiting that right regarding the outcome of that other court-martial. Like I said, had there been an outcome in the sentence of the coconspirator I believe you’re on solid ground. I don’t see it in this case. I find that that would be information that, under 403, would be irrelevant and a direct impeachment of the verdict of the members at this time and I’m not going to allow it.
I further find that the case that you’ve cited to me addresses disparate treatment by various convening authorities or a particular convening authority in addressing similar conduct and treatment of those particular individuals. And in this case you have full reign to discuss what did or did not happen to Cormier and Schwey and you have free reign to indicate that FC3 Elliott went to a court-martial, but you’re not going to provide information regarding the verdict.
DC: So, sir, if I understand your ruling correctly, my client can mention in *156 her unsworn statement that FC3 Elliott went to a court-martial, period, but cannot mention anything beyond that?
MJ: I am not going to allow the verdict to be mentioned. And you can mention all you want about Schwey not going to anything, but I think the issue is disparate treatment and I don’t think it’s been disparate. I find that the notion of acquittal versus non-acquittal under the same general, almost identical facts to be inappropriate in a sentencing determination. I’m not going to allow that.
The essence of the defense argument at trial was that Elliott’s acquittal was “fair game” under Grill, as applied to “disparate treatment” cases. There was no mention that it was properly admissible to rebut the trial counsel’s finding argument. In fact, there was no mention of any “rebuttal theory” at trial, nor was such a theory recognized by any of the judges of the Court of Criminal Appeals in two separate divided opinions. The reason this rationale was not used even by the dissenting judges below was because this was not the context in which the matter was litigated at trial. There is a good reason why that position was not advocated at the trial level or relied upon by the Court of Criminal Appeals. The argument of counsel is not evidence. See, e.g., United States v. Robles-Ramos, 47 M.J. 474, 477 (C.A.A.F. 1998); United States v. Loving, 41 M.J. 213, 238 (C.A.A.F.1994); United States v. Clifton, 15 M.J. 26, 29 (C.M.A.1983). Moreover, the trial counsel’s bias argument relates solely to a witness credibility issue relevant only to the findings and not the sentence in the case. Further, the disposition of the criminal case against Elliott does not dictate or affect the standard that either party must meet in order to make a good faith argument as to the co-conspirator’s role and her bias in favor of Appellant’s acquittal. These different standards of proof were recognized in Dowling v. United States, 493 U.S. 342, 110 S.Ct. 668, 107 L.Ed.2d 708 (1990), in which the Court noted that an acquittal would not preclude the admissibility of evidence for impeachment purposes under a far less demanding standard. An acquittal is based on the failure of proof beyond a reasonable doubt, whereas, impeachment evidence is considered for admission based on a preponderance standard. Regardless, the trial counsel’s argument went to findings, and was not a theme repeated during the Government’s sentencing case. Thus, the acquittal and its mention by Appellant in her unsworn statement must be examined in the context of the evidence on findings, as well as the matters presented by the Government in their sentencing ease.[2]
Examined on its own merits, the acquittal of a co-conspirator is not relevant for sentencing purposes. “[I]t has long been the rule that the sentences in other eases cannot be given to the court-martial members for comparative purposes.” United States v. Mamaluy, 10 C.M.A. 102, 106, 27 C.M.R. 176, 180 (1959). Additionally, findings in other cases may not be used to impeach the verdict. See, e.g., United States v. Pearson, 17 M.J. 149 (C.M.A.1984); see also, United States v. Tobita, 3 C.M.A. 267, 12 C.M.R. 23 (1953)(appropriate for the military judge to exclude testimony by the accused as to his denial of the use of force after he had been convicted of rape); United States v. Teeter, 16 M.J. 68, 73 (C.M.A.1983)(permissible to exclude appellant’s alibi testimony during sworn statement and sentencing).
The majority notes that “[wjhatever the general rule regarding verdict impeachment and sentence comparison, Appellant’s case is distinct....” Sowell, 62 M.J. at 151-52.
*157 “Ordinarily such information [co-conspirator’s acquittal] might properly be viewed in the context as impeaching the members’ findings.” Id. at 152. In this case, the very legitimate comment on witness credibility made during argument on the findings is converted to a basis upon which to permit mention by Appellant in her unsworn statement of that which would otherwise be prohibited during any part of the defense sentencing case, even though this nascent “rebuttal theory” was not the argument advanced at trial or considered by any military judge as a basis upon which to permit mention of Elliott’s acquittal in Appellant’s unsworn statement.
In this fashion, the majority not only announces a further interpretation of R.C.M. 1001(c)(2)(C) — which was the subject at hand — but, gratuitously reinterprets R.C.M. 1001(c)(1) and (2) in their entirety, as well as R.C.M. 1001(d). Perhaps most damaging is the majority’s revision of the relationship between R.C.M. 919 and 1001(d) to suggest that the contents of argument by either counsel on findings may now be the subject of rebuttal evidence (or rebuttal unsworn statement) by either party during the sentencing ease. To the contrary, it would be hard to say there was an abuse of discretion by the military judge when one notes that argument of counsel has not been considered, until this time, as either evidence or testimony, and thus could never be subject to rebuttal.
For all these reasons, and in particular for the air of unpredictability that such decisions continue to inject into military courtrooms around the world, I respectfully dissent.

. See, e.g., United States v. McNutt, 62 M.J. 16 (C.A.A.F.2005)(rejecting three decades of settled law on sentencing by military judge alone); United States v. Brewer, 61 M.J. 425 (C.A.A.F.2005)(rejecting MCM provisions on inferences and re-interpreting settled character evidence rules); United States v. Warner, 62 M.J. 114 (C.A.A.F.2005)(rejecting five decades of Article 46, UCMJ, 10 U.S.C. § 846, interpretation to redefine "reasonably comparable” defense expert); United States v. Kreutzer, 61 M.J. 293 (C.A.A.F.2005)(finding new right of constitutional magnitude to capital mitigation specialist despite at least six related experts on defense team); United States v. Collins, 60 M.J. 261 (C.A.A.F.2004)(reinterpreting R.C.M. 706 to impose new requirements on military judge).

. Rule for Courts-Martial (R.C.M.) 1001(b) "Matter to be presented by the prosecution.” Given that R.C.M. 1001(a)(1) provides that “[a]fter findings of guilty have been announced, the prosecution and defense may present matter pursuant to this rule to aid the court-martial in determining an appropriate sentence,” and that both R.C.M. 1001(h) and (c) include categories of information that are not evidence on the findings, I am not willing to share the majority’s suggestion that such “matters” may include trial counsel's findings argument. Similarly, I am unwilling to conclude that the Government should be entitled under R.C.M. 1001(d) to offer evidence to rebut defense counsel's findings argument.