*151 Judge BAKER
delivered the opinion of the Court.
Appellant was tried by members at a special court-martial. Contrary to her pleas, she was convicted of conspiracy and larceny in violation of Articles 81 and 121, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 881, 921 (2000), respectively. These offenses arose from the theft of two government personal computers. The adjudged and approved sentence included a bad-conduct discharge, confinement for thirty days, and a fine of $550. This Court granted review on the following issue:
WHETHER THE LOWER COURT ERRED WHEN IT HELD THAT THE MILITARY JUDGE DID NOT ABUSE HIS DISCRETION WHEN HE RESTRICTED APPELLANT’S UNSWORN STATEMENT BY NOT ALLOWING HER TO STATE THAT HER CO-CONSPIRATOR HAD BEEN ACQUITTED.
Two of Appellant’s three alleged co-conspirators were not criminally charged and were subsequently administratively separated from the service. The third, Fire Controlman Third Class (FC3) Elliott, was tried by a separate court-martial prior to Appellant’s trial on substantively identical charges and found not guilty. Elliott testified on Appellant’s behalf at trial, stating among other things that she and Appellant never talked about stealing computers, that she herself never took any computers, and that she never saw Appellant take any computers. Subsequent to her testimony, a panel member proffered the following question for Elliott: “What legal actions have been taken/or are pending against you for this incident?” Trial counsel objected to the relevance of the question, and the military judge disallowed it.
Trial counsel later challenged the credibility of Elliott’s testimony during her findings argument stating:
Motives. Let’s talk about motives just for a second. I’ll come back to that later when I talk about each of the witnesses and any motive they may have. Petty Officer Elliott. Who has the biggest motive to come in here and say they didn’t do it? The co-conspirator, that’s who. Not Miller, not Schwey, the co-conspirator. She’s the one that has the best motive to lie____ She wants to help her friend and if her friend goes down?
Emphasis added. Defense counsel made no objection and Appellant was ultimately found guilty.
At a session held pursuant to Article 39(a), UCMJ, 10 U.S.C. § 839(a) (2000), following the announcement of the findings, tidal counsel noticed that Elliott was present in the courtroom. She then asked the military judge to warn the defense that Elliott’s acquittal should not be disclosed to the members. In response, defense counsel asserted that if his client wished to mention it in her unsworn statement, it was her right to do so. When pressed for authority for this position, defense counsel cited United States v. Grill, 48 M.J. 131 (C.A.A.F.1998), arguing that the right to allocution is broad and included the right to reference Elliott’s acquittal in the unsworn statement. The military judge granted the Government’s request finding that reference to Elliott’s acquittal would be “irrelevant and a direct impeachment of the verdict of the members____”
On appeal, a split panel of the United States Navy-Marine Corps Court of Criminal Appeals reversed the military judge’s ruling and remanded for a rehearing on sentence. United States v. Sowell, 59 M.J. 552 (N.M.Ct.Crim.App.2003). The Government sought and obtained an en banc rehearing. On rehearing, a 4-3 majority reversed the earlier panel’s decision, reinstating the military judge’s ruling and Appellant’s sentence, on the ground that any mention of Elliott’s acquittal in her unsworn statement would have challenged the decision of the members on findings and was otherwise beyond the “relevant scope of inquiry ... as defined by R.C.M. 1001(c)(1).” United States v. Sowell, 59 M.J. 954, 959 (N.M.Ct.Crim.App.2004.)
Whatever the general rule regarding verdict impeachment and sentence comparison, Appellant’s case is distinct, because the Government implied that Elliott was guilty of the very offense for which the accused was on trial. Therefore, we now consider whether the military judge correctly limited Appel *152 lant’s statement regarding the disposition of Elliott’s case because such information would have impeached the verdict, or alternatively, whether the military judge erred because this information was a fair response in rebuttal to trial counsel’s findings argument.

Discussion

We review a military judge’s decision to restrict an accused’s sentencing statement for abuse of discretion. See generally Grill, 48 M.J. at 132. The Manual for Courts-Martial, United States (2002 ed.), provides an accused with the right to “testify, make an unsworn statement, or both in extenuation, in mitigation or to rebut matters presented by the prosecution____” Rule for Courts-Martial (R.C.M.) 1001(c)(2)(A). This traditional right has been described as “broadly construed” and “largely unfettered.” Grill, 48 M.J. at 133. However, while “the scope of an unsworn statement may include matters that are otherwise inadmissible under the rules of evidence, the right to make an unsworn statement is not wholly unconstrained.” United States v. Tschip, 58 M.J. 275, 276 (C.A.A.F.2003); United States v. Jeffery, 48 M.J. 229, 230 (C.A.A.F.1998).
In Grill, while describing the right of allocution as largely unfettered, we also stated that the right, while “generally considered unrestricted,” “was not wholly unrestricted.” Id. at 132 (emphasis added); see also Tschip, 58 M.J. at 276. In United States v. Teeter, 16 M.J. 68, 72-73 (C.M.A.1983)(no obligation to provide accused two chances to defend on the merits through unsworn statement), and more recently in United States v. Barrier, 61 M.J. 482 (C.A.A.F.2005)(information in unsworn statement must be relevant as extenuation, mitigation or rebuttal), we identified specific limitations on the right of allocution. We also recognized that the unsworn statement remains a product of R.C.M. 1001(e) and thus remains defined in scope by the rule’s reference to matters presented in extenuation, mitigation, and rebuttal. And, as early as United States v. Tobita, 3 C.M.A. 267, 271-72, 12 C.M.R. 23, 27-28 (1953), it was held that on sentencing, the accused cannot impeach the findings.
The Government argues before this Court, as it did before the military judge, that reference to Elliott’s acquittal would have impeached the findings, as Appellant and Elliott were charged with the same offenses involving the same facts. Moreover, the Government argues, such information would also have been precluded under United States v. Mamaluy, 10 C.M.A. 102, 27 C.M.R. 176 (1959), as impermissible sentence comparison.
Ordinarily, such information might properly be viewed in context as impeaching the members’ findings. As the Court of Criminal Appeals concluded, Teeter and Mamaluy remain good law. However, we conclude under the limited circumstances of this case, that the Government’s argument on findings opened the door to proper rebuttal during Appellant’s unsworn statement on sentencing.[1]
The function of rebuttal is “to explain, repel, counteract or disprove the evidence introduced by the opposing party.” United States v. Banks, 36 M.J. 150, 166 (C.M.A.1992)(quoting United States v. Shaw, 9 C.M.A 267, 271, 26 C.M.R. 47, 51 (1958)(Ferguson, J., dissenting)). Trial counsel was aware of Elliott’s acquittal on the same facts the week before. Nonetheless, her references to Elliott as a co-conspirator, a term connoting criminal liability, during her findings argument implied that Elliott was guilty of the same offense as Appellant, and therefore had a motive to lie in order to protect herself from prosecution. Absent the inference raised in trial counsel’s argument, the military judge might well have found reference to Elliott’s acquittal irrelevant to any sentencing issue. However, the members were instructed on sentencing that “all the evidence you have heard in this case is relevant on sentencing.” R.C.M. 1001(f)(2). It is true that argument by counsel is not *153 evidence. However, it would seem in this case, with the members having been instructed concerning all the evidence, that the right to rebuttal on sentencing should extend to allowing comment upon trial counsel’s characterization of that evidence during findings. After all, R.C.M. 1001(c)(2)(A) affords an accused the right to “rebut matters presented by the prosecution,” suggesting a somewhat broader reading than one limiting the right only to rebut “evidence.”[2] Thus, the tenor of trial counsel’s argument opened the door to the accused to “explain” Elliott’s true status. Moreover, in this case, Elliott’s status was already an issue with at least one member of the panel and remained an open question in light of Appellant’s reference to the other two co-conspirators. In this context, Appellant should have been permitted an opportunity to fairly respond to the implications of trial counsel’s argument on findings. In the terms of the well-worn metaphor, the Government was not only using Teeter as a shield to prevent the members from learning of Elliott’s acquittal, but also as a sword to imply that Appellant’s co-conspirator was guilty. This was unfair in the context presented.
We are cognizant that Appellant failed to object to trial counsel’s argument during findings. This could suggest that counsel concluded that the implications of the argument had not registered with the members. However, at least one member had already asked a specific question regarding the disposition of Elliott’s case. Moreover, defense counsel squarely placed the issue before the military judge on sentencing. Finally, during her unsworn statement, Appellant was allowed to make specific reference to the disposition of the cases of two of her three co-actors. Elliott’s status, however, was left hanging and subject to the members’ speculation.
In this context, the military judge erred by not allowing Appellant to address the disposition of Elliott’s case. This might have been followed by an instruction to the members on the appropriate inferences that could be drawn from the information, citing the principles enunciated in Teeter and Mamaluy. In turn, any statement made by Appellant on this point would have been subject to rebuttal.
Having determined that the military judge erred, we must determine whether the error had a “substantial influence” on the sentence adjudged. United States v. Pablo, 53 M.J. 356, 359 (C.A.A.F.2000). Although the members might have drawn the inference that Elliott was acquitted or received no punishment on account of her presence in the courtroom, they might also have reasonably inferred that she had yet to be tried for the same offense as Appellant. Because Elliott was an alleged co-conspirator with Appellant based on the same facts, trial counsel’s argument and its implications necessarily reached to the core of Appellant’s own case. As a result, we are not convinced that, in the narrow circumstances of this case, the failure to permit Appellant to address the disposition of Elliott’s case in her unsworn statement did not have a substantial influence on the members’ sentencing decision.
DECISION
The decision of the United States Navy-Marine Corps Court of Criminal Appeals is affirmed as to the findings but reversed as to the sentence. The record of trial is returned to the Judge Advocate General of the Navy. A rehearing on sentence may be ordered.

. We note that during her unsworn statement Appellant helped to mitigate the concern the military judge may have had about impeachment of the guilty findings when she said during her statement, "1 accept your judgment against me.”

. Of course, an accused would be prohibited from attempting to relitigate the findings in the guise of rebuttal. See Tobita, 3 C.M.A. 267, 12 C.M.R. 23.