# UNITED STATES NAVY–MARINE CORPS COURT OF CRIMINAL APPEALS

————————————

## No. 201500064

————————————

## UNITED STATES OF AMERICA
Appellee

v.

## KEITH E. BARRY
Senior Chief (E-8), U.S. Navy
Appellant

————————————

Appeal from the United States Navy-Marine Corps Trial Judiciary

Military Judge: Captain Bethany L. Payton-O'Brien, JAGC, USN.
For Appellant: Terri R. Zimmermann, Civilian Counsel;
Jack B. Zimmermann, Civilian Counsel;
Lieutenant Christopher C. McMahon, JAGC, USN.
For Appellee: Lieutenant Taurean K. Brown, JAGC, USN;
Captain Matthew M. Harris, USMC.

————————————

Decided 31 October 2016

————————————

Before PALMER, MARKS, and GLASER-ALLEN, *Appellate Military Judges*

————————————

**This opinion does not serve as binding precedent, but may be cited as persuasive authority under NMCCA Rule of Practice and Procedure 18.2.**

————————————

PALMER, Chief Judge:

A military judge sitting as a general court-martial convicted the appellant, contrary to his pleas, of one specification of sexual assault in violation of Article 120, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 920, and sentenced him to three years' confinement and a dishonorable

discharge. The convening authority approved the sentence as adjudged, and except for the punitive discharge, ordered the sentence executed.[1]

The appellant raises four assignments of error:[2]

(1) The evidence was factually insufficient;

(2) The convening authority abused his discretion in denying a request for rehearing despite his doubts about the fairness and integrity of the court-martial;

(3) The military judge committed reversible error by redacting relevant and discoverable information from the complaining witness's mental health records before providing them to the defense; and

(4) The military judge committed reversible error by restricting the appellant's allocution rights.

We find that the findings and the sentence are correct in law and fact, and no error materially prejudicial to the substantial rights of the appellant occurred. Arts. 59(a) and 66(c), UCMJ.

## I. BACKGROUND

In early December 2012, the appellant and AV were introduced by mutual friends and began a dating relationship that soon became sexual. On the mid-morning of 13 January 2013, after spending the night together in the appellant's hotel room aboard Naval Amphibious Base Coronado, they engaged in a consensual sexual encounter that involved the appellant blindfolding AV and tying her by the wrists and ankles while she was face-down on the bed. He then, with AV's consent, digitally penetrated her anus. Next, however, without seeking her consent, the appellant penetrated her anus with his penis. AV immediately responded by telling him no several times and pleading with him to stop. When it became apparent to AV that the appellant was not going to stop, she then asked him to "[p]lease, go slow."[3] He complied. After approximately two minutes of penetrating AV, the appellant climbed off her and took a shower, leaving AV still tied to the bed. AV testified the anal sex was "tremendously" painful and "felt like something sharp was inside and I was tearing."[4] When the appellant finished his shower, he wiped AV's buttocks with a towel and untied her. After AV took

---

[1] On 16 March 2015, this court remanded the case for a new staff judge advocate's recommendation and convening authority's action. The case was thereafter re-docketed with this Court on 15 June 2015.

[2] We have reordered the assignments of error raised in the appellant's brief.

[3] Record at 291.

[4] *Id.*

her own shower, she realized she was bleeding rectally. The following day, after telling a cousin about the Sunday morning events, AV "mentally had accepted it was rape[.]"[5] Within days she sent the appellant a Facebook message accusing him of sexual assault; within a month she reported the sexual assault to the Naval Criminal Investigative Service (NCIS).

## II. DISCUSSION

### A. Factual sufficiency

The appellant argues his sexual assault conviction was factually insufficient. We disagree.

We review issues of factual sufficiency *de novo. United States v. Beatty*, 64 M.J. 456, 459 (C.A.A.F. 2007). The test for factual sufficiency is "whether, after weighing the evidence in the record of trial and making allowances for not having personally observed the witnesses, [we are] convinced of the [appellant]'s guilt beyond a reasonable doubt." *United States v. Turner*, 25 M.J. 324, 324 (C.M.A. 1987). We take "a fresh, impartial look at the evidence," applying "neither a presumption of innocence nor a presumption of guilt" to "make [our] own independent determination as to whether the evidence constitutes proof of each required element beyond a reasonable doubt." *United States v. Washington*, 57 M.J. 394, 399 (C.A.A.F. 2002). Our factual sufficiency determination is limited to a review of the "entire record," meaning evidence presented at trial. *United States v. Bethea*, 46 C.M.R. 223, 225 (C.M.A. 1973); *see also United States v. Reed*, 54 M.J. 37, 44 (C.A.A.F. 2000).

Proof beyond a reasonable doubt, however, does not mean that the evidence must be free from conflict. *United States v. Rankin*, 63 M.J. 552, 557 (N-M. Ct. Crim. App. 2006), *aff'd*, 64 M.J. 348 (C.A.A.F. 2007). The Government may prove an appellant's intent with circumstantial evidence. *United States v. Kearns,* 73 M.J. 177, 182 (C.A.A.F. 2014); *United States v. Vela*, 71 M.J. 283, 286 (C.A.A.F. 2012). The fact finder may believe one part of a witness's testimony and disbelieve another. *United States v. Goode*, 54 M.J. 836, 841 (N-M. Ct. Crim. App. 2001). When weighing the credibility of a witness, this court, like a fact finder at trial, examines whether discrepancies in witness testimony resulted from an innocent mistake, such as a lapse of memory, or a deliberate lie. *Id.* at 844.

In order to find the appellant guilty of sexual assault, the government was required to prove, beyond a reasonable doubt:

---

[5] *Id.* at 308

(1) That on or about 13 January 2013, at or near Naval Base Coronado, California, the appellant committed a sexual act upon AV, to wit: penetration of her anus with his penis; and

(2) That the appellant did so by causing bodily harm to AV, to wit: penetrating her anus with his penis without her consent.[6]

We have no difficulty finding the government met its burden on the first element. Both during trial and now on appeal, the appellant concedes the charged sexual act occurred on the alleged day and location.[7] Instead, the appellant attacks the factual sufficiency of the military judge's guilty finding arguing that AV consented to the charged sexual activity or, alternatively, that he had an honest and reasonable mistake of fact that she consented. Mistake of fact as to consent requires that the appellant held an honest and reasonable belief that AV consented to the sexual act. RULE FOR COURTS-MARTIAL (R.C.M.) 916(j)(1),(3), MANUAL FOR COURTS-MARTIAL, UNITED STATES (2012 ed.). Thus, there is both a subjective and objective component. *United States v. Goodman*, 70 M.J. 396, 399 (C.A.A.F. 2011). Even if the appellant honestly believed that AV consented, that belief must be objectively reasonable or the defense fails. The government bears the burden of disproving mistake of fact as to consent beyond a reasonable doubt. R.C.M. 916(b)(4).

The appellant argues AV's consent, or his mistake of fact as to her consent, was evidenced by her actions in the days prior to, during, and in the immediate aftermath of the charged assault—which included: discussing her initial affection for the appellant with her friends; exchanging flirtatious text messages with the appellant about needing lubrication during their upcoming weekend; consenting to the bondage, blindfolding, and digital penetration; sitting in the appellant's lap, hugging, and kissing him while in her underwear after being untied and showering; washing their cars together and buying food from an on-base restaurant together after they left the hotel; asking the appellant if he intended to visit the following weekend; and describing the bondage to a friend via text message, within hours of the events, without mentioning the assault.

The military judge issued special findings, upon civilian defense counsel's request,[8] which we find fully supported by the evidence. Specifically, the military judge found AV credible, that she had stopped the appellant when he

---

[6] Charge Sheet at 1. MANUAL FOR COURTS-MARTIAL, UNITED STATES (2012 ed.), Part IV, ¶ 45(b)(1)(B).

[7] Record at 223, 569; Appellant's Revised Brief and Assignments of Error (AOE) of 23 March 2016 at 55-58.

[8] Appellate Exhibit (AE) XL, at 1-7.

previously attempted anal sex in December 2012, and that in their discussion following the first episode, she "made clear to [him] she was not interested in anal sex with him."[9] The next day the appellant again hinted that he wanted to engage in anal sex and was again rebuffed by AV. The military judge found these statements were corroborated by AV's friend, who testified AV told her, during December 2012, about rejecting the appellant's previous anal sex attempt.[10] The military judge found credible AV's testimony that on 13 January 2013, the appellant, without asking for permission, engaged in anal sex with her while she was tied up and blindfolded. She found AV repeatedly told the appellant to stop, and that his compliance with AV's request to slow down indicated he could hear and understand AV. The military judge found, and the record supports, that AV was in shock in the aftermath of the assault and did not seek help or immediately confront the appellant.

The military judge specifically considered and then rejected the defense theory that AV fabricated her allegations either because she was upset that the appellant did not want to continue their relationship, or because AV was a "woman scorned."[11]

During its case-in-chief, the defense called several military and civilian witnesses who testified to the appellant's character for leadership, honesty, peacefulness, and overall good military character. Additionally, the defense offered, and the military judge considered, the flirtatious text message history between AV and the appellant while they were dating; AV's pre-assault text messages with her friends describing both her affection for the appellant and hopes for a long-term relationship with him; AV's e-mail to the appellant accusing him of sexual assault, and his response denying the allegation by stating, "I thought [I] was being playful, fulfilling a fantasy that YOU had commented on (50 Shades of Grey)[;]"[12] several text message conversations between AV and her friends in which they offered emotional support to her in the aftermath of the assault; AV's statement to NCIS, and several video segments of AV's 25 February 2013 NCIS interview in which AV appears to be relatively relaxed and un-traumatized.

The appellant did not testify on the merits.

Having considered all of the admitted evidence, we find AV's testimony was cogent, compelling, and credible. She was unequivocally clear in her words spoken directly to the appellant, both before and during the assault,

---

[9] *Id*. at 3.

[10] Record at 497.

[11] AE XL at 6.

[12] Defense Exhibit B at 4; Appellant's Revised Brief and AOEs at 60.

that she did not like anal sex and did not want to engage in anal sex with him. Her consent to bondage and other sexual activity does not, under the circumstances of this case, equate to consent to anal sex. Even if we assumed, *arguendo,* that the appellant held an honest belief that she consented, we are convinced beyond a reasonable doubt that such a belief would have been unreasonable. Thus, after weighing all the evidence in the record of trial and having made allowances for not having personally observed the witnesses, we are convinced beyond a reasonable doubt of the appellant's guilt.[13]

## B. Convening authority abuse of discretion

The appellant asserts the convening authority abused his discretion in declining a clemency request to disapprove the guilty findings or, alternatively, order a hearing before a different trial judge. Specifically, in a clemency submission, the appellant raised concerns that the military judge convicted on insufficient evidence, curtailed the appellant's allocution rights during sentencing, appeared biased against the defense, and created an appearance of impropriety by meeting with her supervisory judge during deliberations.

The appellant argues the convening authority's stated, serious misgivings about the trial should have prompted him to grant the requested clemency. In particular, the appellant points to the convening authority's strongly expressed concerns about whether the appellant received a fair trial or an appropriate sentence. He also expressed concern about the military judge's judicial temperament "call[ing] into question the legality, fairness, and impartiality of this court-martial."[14] The convening authority encouraged this

---

[13] In arguing AV's consent, the appellant also relies on his own sworn sentencing testimony at trial. We address the admissibility of that testimony for findings purposes in assessing the fourth AOE, *infra.*

[14] General Court-Martial Order No. 05-15 dated 3 June 2015. In relevant part, the convening authority stated:

> In my seven years as a General Court-Martial Convening Authority, I have never reviewed a case that has given me greater pause[.] The evidence presented at trial and the clemency submitted . . . was compelling and caused me concern as to whether SOCS Barry received a fair trial or an appropriate sentence. I encourage the Appellate Court to reconcile the apparent divergent case law addressing the testimony that an accused may present during sentencing for the purpose of reconsideration under R.C.M. 924. Additionally, having personally reviewed the record of trial, I am concerned that the judicial temperament of the Military Judge potentially calls into question the legality, fairness, and impartiality of this court-martial. The validity of the military justice system depends on the impartiality of military judges both in fact and in appearance. If prejudicial error was

court to remand the case if we find prejudicial error was committed. The appellant now asks us to find that the convening authority's declination to disapprove the guilty findings or order a hearing was a "politically expedient . . . abdicat[ion of] his responsibilities[.]"[15] We disagree and find no error in the court-martial's findings or in the convening authority's exercise of his discretion.

We review a convening authority's denial of a request for a rehearing and a decision to approve the findings and sentence for an abuse of discretion. *See United States v. Hull*, 70 M.J. 145, 153 (C.A.A.F. 2011); *United States v. Lofton*, 69 M.J. 386, 391 (C.A.A.F. 2011) (citing *United States v. Ruiz*, 49 M.J. 340, 348 (C.A.A.F. 1998)). "The abuse of discretion standard is a strict one, calling for more than a mere difference of opinion. The challenged action must be arbitrary, fanciful, clearly unreasonable, or clearly erroneous." *United States v. Lloyd*, 69 M.J. 95, 99 (C.A.A.F. 2010) (citations and internal quotation marks omitted).

Congress provided convening authorities broad discretion to act on the findings and sentence of a court. Specifically, the version of Article 60(c), UCMJ, in force at the time of the appellant's offense states:

> (1) The authority under this section to modify the findings and sentence of a court-martial is a matter of command prerogative involving the sole discretion of the convening authority. . . .

> (2) . . . The convening authority . . . in his sole discretion, may approve, disapprove, commute, or suspend the sentence in whole or in part.

> (3) Action on the findings of a court-martial by the convening authority . . . is not required. However, such person, in his sole discretion, may–

>> (A) dismiss any charge or specification by setting aside a finding of guilty thereto; or

>> (B) change a finding of guilty to a charge or specification to a finding of guilty to an offense that is a lesser included offense of the offense stated in the charge or specification.

---

committed, I strongly encourage the Appellate Court to consider remanding this case for further proceedings or, in the alternative, disapproving the punitive discharge pursuant to Article 66(c), UCMJ, thereby allowing the accused to retire in the rank that he last honorably served.

[15] Appellant's Revised Brief and AOEs at 12.

A litany of court decisions reinforce the plain text of Article 60. *See, e.g., United States v. Nerad*, 69 M.J. 138, 145 (C.A.A.F. 2010) (noting that "[t]he language of Article 60(c), UCMJ, gives a convening authority unfettered discretion" to modify findings and to approve, disapprove, or suspend a sentence); *United States v. Brown*, 40 M.J. 625, 629 (N.M.C.M.R. 1994) ("In *his sole discretion*, [the convening authority] may approve, disapprove, commute, or suspend the sentence in whole or in part.") (citation omitted, alteration and emphasis in original); *Ruiz*, 49 M.J. at 348 ("When an appellant requests the convening authority to order a post[-]trial Article 39(a) session, it is a matter for the convening authority's sound discretion whether to grant the request.").

Although the convening authority's action expresses important concerns about the evidence and the military judge, it also evidences a clear understanding of his legal options. It states he conducted a detailed review of the record of trial and that he considered the results of trial, the recommendations from his staff judge advocate, and all matters properly submitted by the appellant and the victim. He specifically acknowledges his "authority to grant the clemency relief requested by the accused."[16] Moreover, the convening authority appears to have followed the advice of his staff judge advocate—who, on 13 April 2015, after citing the appellant's allegations of legal error, told the convening authority it is "[m]y position that corrective action is warranted on neither the findings nor sentence.[17] On 12 May 2015, the acting staff judge advocate similarly recommended against taking corrective action on the findings or sentence and further advised that the case law on the appellant's rights to allocute (the fourth AOE addressed, *infra*) "requires resolution by the appellate authority."[18]

"From the record before us it appears the appellant received that to which he was entitled–an individualized, legally appropriate and careful review of his sentence by the convening authority." *Brown*, 40 M.J. at 629-30 (citation omitted). Here the convening authority, fully understanding the range of his post-trial discretion and after being correctly advised on the law, took his action in compliance with the law. He understood that he could have granted the appellant's requested relief, but after fully considering his legal options, decided instead to forward the case for appellate review. Accordingly, we find

---

[16] General Court-Martial Order No. 05-15 dated 3 June 2015 at 2.

[17] Staff Judge Advocate's (SJA's) Addendum to the Recommendation ICO SOCS [Barry] of 13 April 2015 at 1.

[18] SJA's Addendum to the Recommendation ICO SOCS [Barry] of 12 May 2015 at 1.

his action was not arbitrary, fanciful, clearly unreasonable, or clearly erroneous and therefore not an abuse of his discretion. *Lloyd*, 69 M.J. at 99.

## C. Withholding psychotherapist-patient records reviewed *in camera*

Within two days of the sexual assault, AV sought and began participating in counseling with two private civilian therapists. At trial, the defense sought AV's therapy records, arguing she began counseling because of her interaction with the appellant and therefore the therapist's records likely contained information concerning AV's "medications, inconsistent statements, prior sexual assault allegations, and information to rebut any allegation of victim impact."[19] During a motions hearing brought under MILITARY RULE OF EVIDENCE (MIL. R. EVID.) 513, SUPPLEMENT TO MANUAL FOR COURTS-MARTIAL, UNITED STATES (2012 ed.), and over the prosecutor's objection,[20] AV was questioned by the military judge and revealed her therapists' names.[21] The military judge then ordered subpoenas issued for AV's treatment records and further directed the records "come straight to me and not to anybody else."[22] She stated she would review the records "to determine if there is anything in there that is relevant to the defense"[23] and that the "only records [she was] inclined to turn over are what [AV] said about the incident itself and any perception or mental health issues that might impair [AV's] ability to proceed."[24] The records were subsequently provided to the military judge, who, after conducting her *in camera* review, gave redacted versions of the records to the parties. When attaching the redacted and sealed records as appellate exhibits, the military judge stated only that she "determined a few entries were releasable to the Defense, copied those pages, [and] redacted out the portions that were not releasable[.]"[25]

The appellant now argues the military judge's redactions included constitutionally-required, relevant, and discoverable information which, if disclosed at trial, could have been used in the formation of the defense strategy, to guide investigative steps, and to impeach AV's testimony at trial. In particular, the appellant asserts his defense counsel could have used certain portions of the redacted therapist notes to cross-examine AV on:

---

[19] AE V at 5.

[20] AV was not represented by a Victim's Legal Counsel.

[21] Record at 45-46.

[22] Record at 59; AE XIV at 1.

[23] Record at 59.

[24] *Id.* at 32.

[25] *Id.* at 87.

(1) her changing demeanor when variously describing the assault to NCIS, her doctors, and in testimony, and how her traumatized effect increased over time;

(2) a therapist's annotation that AV had not told many people about the assault, when evidence exists that she told many friends and sought their support;

(3) other stressors and family problems;

(4) a February 2014 therapist note indicating her therapist explored with AV "how her story has begun to transform";

(5) AV's concerns that the trial counsel was going to be replaced; and

(6) AV's unease in February 2014 when she received some sort of award from someone she believed was the convening authority and who AV believed might be involved in the case.

We review a military judge's decision to disclose or withhold psychotherapist-patient records reviewed *in camera* for an abuse of discretion. *United States v. Klemick*, 65 M.J. 576, 580-81 (N-M. Ct. Crim. App. 2006).[26] "To find an abuse of discretion requires more than a mere difference of opinion–the challenged ruling must be arbitrary, fanciful, clearly unreasonable, or clearly erroneous." *United States v. Jasper*, 72 M.J. 276, 279-80 (C.A.A.F. 2013) (internal quotation marks and citation omitted).

The President implemented MIL. R. EVID. 513 in response to the Supreme Court's decision in *Jaffee v. Redmond,* 518 U.S. 1, 11 (1996) (recognizing confidential communications between a psychotherapist and patient must be protected from involuntary disclosure in order to promote society's interest in encouraging people with mental and emotional problems to seek treatment). *See also United States v. Clark*, 62 M.J. 195, 199 (C.A.A.F. 2005) (explaining the rule is "based on the social benefit of confidential counseling recognized by *Jaffee*, and similar to the clergy-penitent privilege" (quoting MANUAL FOR COURTS-MARTIAL, UNITED STATES (2000 ed.), App. 22, at A22-44)).

Under MIL. R. EVID. 513(a), "[a] patient has a privilege to refuse to disclose and to prevent any other person from disclosing a confidential communication made between the patient and a psychotherapist . . . in a case arising under the [UCMJ], if such communication was made for the purpose of facilitating diagnosis or treatment of the patient's mental or emotional

---

[26] Although the appellant, citing *United States v. Roberts*, 59 M.J. 323, 326, (C.A.A.F. 2004), invites us to apply a *de novo* standard of review, we decline to do so. The records at issue were never in the Government's possession, thus the R.C.M. 701(a)(2)(A) disclosure requirements do not apply.

condition." Such communications may only be disclosed pursuant to eight defined exceptions.[27] MIL. R. EVID. 513(d).

We find that the military judge did not abuse her discretion when she redacted portions of AV's medical records before providing them to the parties.

As a threshold matter, we first conclude the contested records are, in fact, privileged psychotherapist-patient communications as defined by MIL. R. EVID. 513. Second, AV did not consent to, or otherwise waive, the disclosure of her privileged mental health records.[28] Third, given the case facts, exceptions (1)-(7) do not apply, and the only colorable exception is "when admission or disclosure of a communication is constitutionally required." MIL. R. EVID. 513(d)(8).

The results or reports of mental examinations (if in the government's possession), must be made available to the defense when it is "material to the preparation of the defense[.]" R.C.M. 701(a)(2)(B). Nothing in the discovery rules, however, "shall be construed to require the disclosure of information protected from disclosure by the Military Rules of Evidence." R.C.M. 701(f).

In assessing whether the communications were constitutionally required, we recognize "[t]he ability to question adverse witnesses . . . does not include the power to require the pretrial disclosure of any and all information that might be useful in contradicting unfavorable testimony[and that] the Confrontation Clause only guarantees 'an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish.'" *Pennsylvania. v. Ritchie*, 480 U.S. 39, 53, (U.S. 1987) (per curiam) (quoting *Delaware v. Fensterer*, 474 U.S. 15, 20 (U.S. 1985) (emphasis in original)). Further, we note "well-established rules of evidence permit trial judges to exclude evidence if its probative value is outweighed by certain other factors such as unfair prejudice, confusion of the issues, or potential to mislead the jury." *Holmes v. South Carolina*, 547 U.S. 319, 326 (2006) (citing FEDERAL RULE OF EVIDENCE 403) (additional citations omitted). "An accused does not have a right to cross-examine a witness on any subject solely because he describes it as one of credibility, truthfulness, or bias. There must be a direct nexus to the case that is rooted

---

[27] The 2015 National Defense Authorization Act has since deleted the "constitutionally required" exception from MIL. R. EVID. 513(d)(8). *See* Pub. L. No. 113-291, § 537, 128 Stat. 3292, 3369.

[28] AE VIII at 1; Record at 43 (AV testified during the MIL. R. EVID. 513 motion hearing that she considers the defense request for her mental health records as "being attacked [and that] it's just a way to intimidate me").

in the record." *United States v. Sullivan*, 70 M.J. 110, 115 (C.A.A.F. 2011). Finally, we recognize "[i]mpeachment 'evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.'" *United States v. Morris*, 52 M.J. 193, 197, (C.A.A.F. 1999) (quoting *United States v. Bagley*, 473 U.S. 667, 682 (1985)) (additional citation omitted).

Remaining mindful of the societal interests in promoting confidential counseling, as expressed in *Jaffee v. Redmond,* we next assess whether the information redacted by the military judge was material and whether its disclosure to the defense would have led to a different result.

### 1. AV's demeanor

The appellant argues his defense counsel would have used AV's redacted mental health notes to cross-examine her on her demeanor becoming more "traumatized" during the course of her therapy as compared to when she was interviewed by NCIS. We find such evidence neither material nor relevant. First, we find nothing in the therapy notes that was inconsistent with AV's testimony. Second, we are unable to discern how trial defense counsel could have used the therapy notes to attack AV's credibility. Had defense asked her if she portrayed a traumatized affect during the course of her therapy sessions, she would have doubtlessly agreed and provided the same answers she provided during her sentencing testimony: that she was diagnosed with PTSD, that she suffered daily crying for months and then random crying outbursts for even more months, and that she became hyper-paranoid and vigilant.[29] We are unable to conclude that these responses, when balanced against her relatively relaxed demeanor when being interviewed by a female NCIS agent, would have caused a different result in the proceedings.

Additionally, we find the redacted notes unnecessary when balanced against other available evidence. The defense offered recorded segments of AV's NCIS interview into evidence, allowing the military judge to compare AV's exact demeanor during her interview to her courtroom demeanor. Additionally, at least one released therapy note indicated AV appeared traumatized (*e.g.*, "sad," "crying," and in a "state of shock").[30] Thus, had the appellant wanted to cross-examine AV on her demeanor using the therapy notes, he could have done so. Also, notwithstanding the military judge's redactions, the appellant used the NCIS video interview to substantially cross-examine AV and make exactly the point he now claims he was prevented from presenting.[31] Finally, other evidence of AV's post-assault

---

[29] Record at 610-11.

[30] AE XXI at 7.

[31] Record at 326, 330-31, 333-36.

trauma demeanor was readily available in the form of her co-workers and friends, who were known to the defense and who testified during the sentencing phase of the trial. These available, alternate witnesses to AV's demeanor made piercing the privilege unnecessary. *See Klemick*, 65 M.J. at 580 (considering whether the information sought was merely cumulative of other information available and whether the moving party made reasonable efforts to obtain the same or substantially similar information through non-privileged sources in determining whether an *in camera* review of communications covered by MIL. R. EVID. 513 was required).

### 2. AV's disclosures to others

The appellant asserts the military judge erred by withholding a May 2013 therapy record which noted AV said she had "not told many people" of the assault.[32] Given her court-martial testimony and other evidence that AV discussed the assault with close friends, the appellant argues the privileged communication would have provided a ripe area for cross-examination and argument. We disagree.

The appellant provides no insights as to how the inherently subjective statement could actually be used at his court-martial. Assuming the appellant intended to use AV's statement to impeach her testimony, and further assuming, if cross-examined on this point, that AV agreed she told her therapist she did not tell "many" people about the assault, we do not believe this would cause any fact-finder to reach a different result. Regardless of what AV's definition of the word "many" or even "told" (which could mean in e-mail, or text message, or in person), the evidence indicates she did tell her circle of close friends shortly after the assault occurred.

Taken together, we find AV's potential statement, made more than four months after the assault during a private therapy session, to be neither material nor relevant.

### 3. Other stressors on AV

The appellant argues that AV's medical records indicate she had "other stressors" in her life, and had such information been disclosed to him, "it could have led to additional discovery requests and helped to further develop Defense strategy, cross-examination, and argument on findings as well as at sentencing."[33] The appellant, however, now armed with the un-redacted records, provides no insights or theories as to what that different strategy, cross-examination, or argument would be. In general terms, the stressors the appellant identifies relate to AV's family and financial issues. We have

---

[32] AE XX at 4.

[33] Appellant's Revised Brief and AOEs at 28.

carefully examined the record and find these identified stressors are wholly unrelated to the charges offenses. Indeed, all the therapy notes describe events and circumstances that occurred long after the assault and involved people and events not associated with the assault, and thus, these "stressors" appear to be exactly the kind of information MIL. R. EVID. 513 is designed to protect. *See Jaffee*, 518 U.S. at 11; *see also Sullivan*, 70 M.J. at 117 (holding that evidence of a witness's psychological state is properly excluded if it did not affect her ability to perceive and tell the truth)). Finding no relevant nexus to the assault or the appellant, we conclude the redacted notes related to the "other stressors" are not material.

### 4. Transforming story

The appellant argues that a March 2014 counseling record stating AV's therapist "documented how over time, [AV's] 'story has begun to transform'" was relevant and should have been made available for the defense's cross-examination of AV.[34] We disagree. The entire entry actually reads, "[AV] spoke of coming to terms with how she was impacted and changed through this experience. [Therapist] explored with [AV] how her story had begun to transform."[35] When read in context with other entries describing some relative improvements in AV's depression, sleep, and outlook, it is readily apparent the entry was referring to AV's personal growth and the development of internal coping strategies during her 11 months of counseling with this therapist.

Additionally, although with the benefit of hindsight, a review of AV's initial Facebook message to the appellant, her February 2013 statement to NCIS, and her in-court testimony indicate that AV's recounting of the sexual assault did not change or "transform" over time. We are satisfied that had the military judge provided the counseling statement and permitted cross-examination thereon, the results of the proceedings would not be different. *Morris*, 52 M.J. at 197.

### 5. New trial counsel

The appellant wanted to introduce a therapist's March 2014 comment that AV had been notified "that her current attorney would be taken off" her case and "another would be taking his place."[36] The appellant argues this comment about AV's "attorney,"—which he infers meant the trial counsel—combined with other evidence that she conducted her own investigation (locating the staff worker who cleaned the appellant's hotel room, researching

---

[34] *Id.*

[35] AE XX at 14.

[36] *Id.* at 14-15.

the appellant's real estate transactions, and attempting to locate the appellant's ex-girlfriends) demonstrated that she was emotionally invested in the prosecution of the case. As such, the appellant asserts he should have been provided the counseling record to explore the matter during AV's cross-examination. We again disagree.

First, there is no mention of AV's "investigative" efforts in her therapy records, thus the only information at issue is the entry related to "her attorney." Again, when read in context the statement's lack of materiality becomes apparent. Immediately after this entry, AV's therapist elaborated that AV was disappointed with the "constant shuffle," which she described as "disheartening."[37] Other than expressing fears about pending court proceedings and delays, her counseling record makes no mention of her emotional investment in the investigation and prosecution. As such, we find the information neither relevant nor material.

Second, even if we assumed AV's comment about her "current attorney" indicated her emotional investment in the investigation, and was thus relevant fodder for cross-examination, other evidence was available and known to the defense to adequately address the issue. Indeed, the military judge permitted the defense to extensively cross-examine AV on her own investigative efforts, including internet searches for the appellant, seeking a gynecological examination, contacting the appellant's hotel to locate and attempt to question the cleaning staff, seeking the appellant's real estate records, plotting his properties on a map, and contacting a police department near the appellant's previous command. As such, the psychotherapist-patient records were cumulative with other readily available information, thus negating the necessity of invading the privilege. *Klemick*, 65 M.J. at 580.

### 6. AV's relationship with the convening authority

The appellant cites two examples from AV's therapy notes which he frames as "AV's relationship with the convening authority" and argues should have been disclosed before trial.[38] A complete reading of the entries reveals a February 2014 chance encounter wherein she believes she received an award from a commanding officer whom she thought might be the convening authority. Specifically, the therapy notes state, "[AV] feels unsure, her thoughts that he may be possibly involved in the case. [AV] noted not saying more than 'thank you' to this man, she [reportedly] felt shaky near him."[39] In May 2014, the therapy notes indicate that "[AV] saw admiral Loci

---

[37] *Id.*

[38] Appellant's Revised Brief and AOEs at 29.

[39] AE XX at 14.

[sic] again at another ceremony, and at this [point AV] knew the case was going to trial. Awkward. Uncomfortable being so close to the generalized source of pain."[40]

When reviewed in context, it becomes apparent AV had no relationship with the convening authority and, further, there was nothing about their chance meetings to indicate any nexus to the case. The counseling note indicates AV did not fully understand the convening authority's role, was not sure he was the convening authority, and did not discuss the case with him. Moreover, the first encounter occurred before the appellant's commanding officer forwarded the case to the general court-martial convening authority and almost a month before the staff judge advocate signed his pretrial advice. In their second encounter three months later, AV seemed to better appreciate the convening authority's role, but there was again no discussion of the case and nothing to indicate the convening authority understood who AV was. Accordingly, when viewed in context, we again find these notes were not material and, had they been provided to the defense, would not have caused a different result in the proceedings.

Consequently, we find none of the excluded psychotherapist-patient records contain information that was material, relevant, or necessary for the defense. We are further satisfied the exclusion of the therapy notes did not implicate the appellant's constitutional rights. "The question is whether '[a] reasonable jury might have received a significantly different impression of [the witness's] credibility had [defense counsel] been permitted to pursue his proposed line of cross-examination.'" *United States v. Collier*, 67 M.J. 347, 352 (C.A.A.F. 2009) (quoting *Delaware v. Van Arsdall*, 475 U.S. 673, 680 (1986)) (alterations in original). We are satisfied, based on the reasoning set forth above, that had the military judge provided the redacted records to the defense, the military judge serving as the fact-finder would not have had "a significantly different impression of [AV's] credibility." *Id.*

## D. Appellant's allocution rights

The appellant argues the military judge abused her discretion when she interrupted and then restricted the appellant's sworn testimony during the presentencing phase of his court-martial. In particular, the military judge would not allow the appellant to describe a conversation he purportedly had with AV on the day prior to the assault in which he claims AV asked him whether he would be "open to experiment[ing with] . . . bondage and anal

---

[40] *Id.* at 16. The convening authority in this case was Rear Admiral Lorge. However, the charges were referred to general court-martial on 31 March 2014 by the Acting Commander, Navy Region Southwest.

sex."[41] By restricting his testimony, the appellant now avers the military judge prevented him from explaining the relevant events of the assault from his perspective in a way that could have lessened his criminality (*e.g.*, that the appellant had an honest but mistaken belief that AV consented to the anal sex). Additionally, the appellant argues that by limiting his testimony, the military judge prevented him from effectively rebutting AV's statements impugning his character.

A military judge's decision to restrict an accused's sentencing statement is reviewed for an abuse of discretion. *United States v. Sowell*, 62 M.J. 150, 152 (C.A.A.F. 2005). Although the law generally accords the defense significant latitude in presenting evidence during sentencing, the right is "not wholly unrestricted." *Id.* (citation and internal quotation marks omitted). During a trial's sentencing phase, the defense may present matters in extenuation, "including those reasons for committing the offense, *which do not constitute a legal justification or excuse*." R.C.M. 1001(c)(1)(A) (emphasis added). Courts have long held that an accused cannot impeach the findings during sentencing. "[A]n accused is entitled to vigorously contest his innocence on findings, but is not entitled to do so on . . . sentencing. Sentencing is intended to afford the members the opportunity to focus on and address matters appropriate for individualized consideration of an accused's sentence." *United States v. Johnson*, 62 M.J. 31, 37 (C.A.A.F. 2005). *See also United States v. Teeter*, 16 M.J. 68, 72-73 (C.M.A. 1983) (upholding a military judge's members instruction to disregard an accused's sworn sentencing testimony wherein he attempted to resurrect an alibi defense, noting there is "no obligation, either under the Constitution or elsewhere, to provide an accused two chances to defend on the merits."); *Sowell*, 62 M.J. at 152 (reaffirming that an accused may not impeach the findings during the sentencing phase of trial); *United States v. Tobita*, 12 C.M.R. 23, 27-28 (C.M.A. 1953) (holding a Law Officer properly excluded the accused's statements during his pre-sentencing hearing that extended to a legal justification).

At trial, after the military judge interrupted the appellant's sentencing testimony regarding AV's purported desire to experiment with anal sex, she specifically asked the civilian defense counsel if the purpose of his examination was to "[get] into the merits of my findings[?]"[42] The defense counsel agreed it was, and then explained his intent was to eventually ask the military judge to reconsider her findings. He explained the testimony was intended to provide the appellant's state of mind, and his version of events along with background and context. After a recess, the defense counsel

---

[41] Record at 752.

[42] *Id.*

17

further asked the military judge to consider the appellant's version of events in extenuation and mitigation and to weigh the testimony as she deemed appropriate. Thereafter, the defense counsel moved for reconsideration, which the military judge denied. The defense did not argue, as the appellant does now, that a purpose of the appellant's testimony was to demonstrate his honest, but unreasonable, belief AV consented to the sexual acts.

We are satisfied the military judge did not abuse her discretion when limiting the appellant's testimony. After confirming the defense intended to use the testimony, in part, to seek reconsideration, she properly cited prevailing case law and the Rules for Courts-Martial that prohibit verdict impeachment in sentencing. She then *sua sponte* recessed the court to give civilian defense counsel the opportunity to produce case law that would permit the accused's sentencing testimony to impeach the verdict. The defense produced no case to support his impeachment efforts.[43] The military judge also confirmed the defense possessed during findings the evidence it sought to elicit, and thus she would not let them use it to re-litigate findings during sentencing. *Johnson*, 62 M.J. at 37; *Teeter*, 16 M.J. at 73.

Under these circumstances we find the military judge's actions were not "arbitrary, fanciful, clearly unreasonable, or clearly erroneous," and we will not disturb them. *Lloyd*, 69 M.J. at 99.

Even if we assumed that the military judge abused her discretion by limiting the appellant's testimony, we find such error harmless. Although initially preventing the appellant from providing testimony inconsistent with the verdict, the military judge ultimately granted defense counsel "leeway under [R.C.M] 1001(c)" to present matters in extenuation and mitigation but cautioned, "the accused is entitled to one trial on the merits, not two. And, if you're going too far a field [sic] . . . I will shut you down."[44] Notwithstanding this warning, the military judge permitted the appellant to discuss the following under direct and redirect examination: that AV sat in his lap after the assault and kissed him; that AV was upset when he cancelled their date planned for the following weekend; that "there [was] absolutely no time [the appellant had] malicious intent or . . . meant to harm AV [or] sought to harm her in any way[;]"[45] and that the night before the assault he and AV discussed a fantasy about "being tied up and about anal sex."[46] On cross-examination, the appellant testified, again without interruption by the

---

[43] *Id.* at 755.

[44] *Id.* at 759.

[45] *Id.* at 763. In fact, the military judge overruled a trial counsel objection to this response.

[46] *Id.* at 770.

military judge, that he told AV "to go to hell" because she had accused him of being a rapist; that the sexual encounter was "AV's fantasy;" that he denied AV's description of the sexual assault including that she told him to stop, by saying, "[t]hat's not what I had done . . . [a]nd that's not what was said;"[47] and that the night before the sexual assault, AV told him she was willing to experiment, to which he responded, he was "comfortable with whatever you are," and she replied, "anal sex."[48] He also claimed his ex-girlfriends could verify that he did not participate in anal sex.

In short, in spite of the military judge's initial ruling, she still gave the appellant wide latitude to discuss his version of and his perspective on the charged offenses. The military judge, as the fact finder, considered the appellant's denial of wrongdoing, his belief that he was participating in AV's fantasy, and his belief that she wanted to experiment with anal sex. Further, by permitting and considering his perspective on the sexual encounter, the military judge was free to consider such evidence when weighing the prosecution's evidence and considering the trial counsel's argument. Indeed, civilian defense counsel still framed much of his sentencing argument as a motion for reconsideration in which he challenged the plausibility of AV's testimony. Thus, even if the military judge arguably abused her discretion in initially interrupting the appellant's direct examination, we find she ultimately gave the appellant the latitude to present evidence that was inconsistent with the verdict, that rebutted the prosecution's evidence, and that could be considered in extenuation and mitigation. Therefore, finding no prejudice in the military judge's initial ruling, we decline to grant relief. Art. 59(a), UCMJ.

### III. CONCLUSION

The findings and the sentence are affirmed.

Senior Judge MARKS and Judge GLASER-ALLEN concur.

For the Court

R.H. TROIDL
Clerk of Court



---

[47] *Id.* at 767.

[48] *Id.* at 768. AV later testified in rebuttal that she and the appellant did not discuss anal sex the day prior to the assault and that she did not reverse her previously stated opposition to anal sex. *Id.* at 781-82.